STATE OF NORTH CAROLINA v. WONALD BORUM WESTMORELAND

No. 356A84

(Filed 5 September 1985)

1. **Criminal Law § 75— refusal to answer questions during first interrogation— not assertion of right to silence**

A defendant in a prosecution for murder and assault did not assert his right to remain silent, and a subsequent incriminating statement was not required to be excluded, where defendant willingly submitted to questioning, often remained silent when asked questions, repeated denials from time to time, and did nothing else that might indicate he wished to invoke his right to silence. The mere failure of a suspect who has consented to interrogation to answer some or even the majority of the questions put to him is not enough, standing alone, to indicate that he desires to exercise his right to silence.

2. **Criminal Law § 75.8— resumption of interrogation—renewed Miranda warnings not required**

In a prosecution for murder and assault, an incriminating statement made during defendant's second interrogation was not inadmissible because he was not again advised of his rights where there was no evidence that defendant was unaware of his rights at the commencement of the second interrogation, the second interrogation began within two and a half hours of the initial warning, defendant stated at the beginning of the second interrogation that he understood his rights, the second interrogation was conducted by the same officer and took place in the same location as the initial interrogation, defendant's second statement varied from his first only in the inclusion of the incriminating statement, and defendant was a high school junior of average intelligence and ability who could read and write and who gave no indication of having mental or emotional problems.

3. **Criminal Law § 73— admission of hearsay—no error**

In a prosecution for murder and assault, hearsay evidence that a victim had said that defendant had given him a .22 caliber semi-automatic rifle to hold until defendant paid off a bet on a football game was admissible where there was other evidence strongly corroborating the hearsay testimony and establishing the truthfulness and reliability of the statements of the victim. Moreover, any error was harmless because the hearsay merely repeated what defendant had already admitted in his custodial statement.

4. **Criminal Law § 138.29— aggravating factor—joined offenses—erroneous**

In a prosecution in which defendant was convicted of one count of first degree murder, two counts of second degree murder and one count of assault with a deadly weapon with intent to kill inflicting serious injury, the trial court erred by finding as an aggravating factor for the non-capital offenses that the offenses were committed within a short time of one another and that the first degree murder was a part of other crimes involving violence against other persons. An offense covered by the Fair Sentencing Act could not be aggravated by contemporaneous convictions of joined offenses even where the

trial judge relied on a course of conduct and did not explicitly use the convictions where the effect was to use defendant's contemporaneous convictions of joined offenses as an aggravating factor.

**5. Constitutional Law § 63; Jury § 7— death qualifying jury—no error**

The trial court did not err in a prosecution for murder and assault by death qualifying the jury.

Justice BILLINGS did not participate in the consideration or decision of this case.

APPEAL by defendant as a matter of right pursuant to N.C.G.S. § 7A-27(a) from the judgments entered by *Kirby, J.*, at the 23 January 1984 Criminal Session of MECKLENBURG County Superior Court. Heard in the Supreme Court 13 May 1985.

Defendant was convicted of one count of first degree murder, two counts of second degree murder and one count of assault with a deadly weapon with intent to kill inflicting serious injury. Following the sentencing hearing on the first degree murder charge the jury recommended a sentence of life in prison. Defendant was then sentenced to three consecutive terms of life imprisonment on the murder counts and a concurrent term of imprisonment for twenty years on the assault count.

The State's evidence tended to show that shortly before 9:00 p.m. on the night of 28 January 1983 defendant left the residence of Joseph Johnson at Tanglewood Apartments after being ordered to leave by Mr. Johnson. Defendant returned at about 10:00 p.m. and shot Bryant Butler and Joseph Johnson. Joseph Johson later died. Defendant was identified as the killer by Bryant Butler and by Alberta Cochran who testified that Joseph Johnson had told her that defendant shot him. Other witnesses saw a man with a rifle walk to the parking lot of Tanglewood Apartments and drive away in a yellow Ford EXP. Defendant owned a yellow Ford EXP. Earlier on the same night between 9:30 and 10:00 p.m. John Blakemore and his mother Patricia Blakemore were murdered. All of the shootings were done with a .22 caliber weapon. Roger Thompson, a firearms and toolmark examiner, examined the markings on spent shell casings found at the scenes of both crimes and testified that in his opinion the casings were fired from the same weapon. He also testified that spent projectiles recovered from both scenes had been fired from the same type of weapon. Prior to the shooting defendant had given John

Blakemore a .22 caliber rifle as security or payment for a ten dollar football bet. The rifle was not recovered.

Shortly after 11:30 p.m. on the night of his arrest defendant executed a waiver of his *Miranda* rights and agreed to answer questions. For the most part defendant was unresponsive but did make several comments during the course of the questioning and denied that he had shot anyone. The interrogation ended at approximately 1:00 a.m. and defendant was taken to the county jail. At no point did defendant state that he wanted to invoke his right to remain silent.

Later that morning Investigator Charlie VanHoy learned of the murders of Patricia and John Blakemore. He was informed that the shootings at the Blakemore residence and at Tanglewood Apartments both involved a .22 caliber weapon. At about 2:00 a.m. Officer VanHoy had defendant brought back for further interrogation. Defendant was informed that the police had discovered the Blakemore murders and had information that he had given a .22 caliber rifle to John Blakemore. Officer VanHoy also told him that his rights were still in effect unless he wanted something explained. Defendant said that he understood his rights and wanted to continue. During the second interrogation he admitted that he had given John Blakemore a .22 caliber rifle for a ten dollar football bet.

Defendant did not offer any evidence.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State.*

*Ann B. Petersen, for defendant-appellant.*

BRANCH, Chief Justice.

[1]  Defendant first assigns as error the admission into evidence of his custodial statement that he had given John Blakemore a .22 caliber rifle as payment for a football debt. He contends that the statement was obtained through an interrogation conducted after he had asserted his right to silence. We hold that defendant did not invoke his right to silence and that the trial court properly admitted this statement into evidence.

Once warnings have been given, questioning of a suspect must cease if he indicates in any way his desire to remain silent.

*Miranda v. Arizona,* 384 U.S. 436, 473-74 (1966). Defendant argues that his failure to answer questions during his first interrogation amounted to an exercise of his right to silence. We disagree.

The trial judge conducted an extensive *voir dire* and made the following findings of fact.

When questioned by Officer VanHoy during the first interrogation defendant stated that he did not shoot anyone, he did not own a gun, and the police could not prove anything without a gun. He also stated that he had not been drinking even though he had a faint odor of alcohol about his person. Officer VanHoy was in possession of highly incriminating evidence and knew that defendant had been identified as the killer of Joseph Johnson. In the questions put to defendant this evidence was presented in various ways but defendant either gave no answer or merely repeated his earlier statements. Since defendant either did not answer his questions or gave repetitious answers Officer VanHoy concluded that further questioning based on the information available to him at that time would not be helpful and terminated the interrogation. The trial judge specifically found that "defendant never expressed a desire to stop talking or answering questions." Upon learning of the Blakemore murders and evidence which implicated defendant in those murders, Officer VanHoy brought defendant back to the Law Enforcement Center for additional interrogation. Based on these findings and his conclusions of law the trial judge denied defendant's motion to suppress his custodial statement. These findings are supported by competent evidence in the record and are binding on appeal. *See State v. Jackson,* 308 N.C. 549, 304 S.E. 2d 134 (1983). They in turn support the trial judge's conclusion that defendant's constitutional rights were not violated.

The facts as found by the trial judge indicate that defendant willingly submitted to questioning and made such answers and denials as he deemed prudent. Though he often remained silent when asked questions, he did repeat his denials from time to time. Since defendant did nothing else that might indicate he wished to invoke his right to silence, his failure to answer only showed that he did not desire to respond to specific questions. A suspect charged with a crime may have reasons for agreeing to submit to interrogation other than a desire to confess or clear

himself of suspicion by giving satisfactory answers to an investigator's questions. A desire to discover what evidence the police have against him and to know the strength of that evidence may well be the primary reason a suspect waives his fifth amendment rights and submits to interrogation in which he answers questions of his own selection. Therefore, we hold that the mere failure of a suspect who has consented to interrogation to answer some or even the majority of the questions put to him is not enough, standing alone, to indicate that he desires to exercise his right to silence. Under the facts and circumstances of this case we do not think that defendant asserted his right to remain silent.

[2] Defendant next argues that any statements he made during the second interrogation are inadmissible because he was not again advised of his rights. Defendant relies on a number of cases from other jurisdictions for support. Three of these cases, *United States v. Collins*, 462 F. 2d 792 (2d Cir.), *cert. denied*, 409 U.S. 988 (1972); *Scott v. State*, 251 Ark. 918, 475 S.W. 2d 699 (1972); *People v. Gary*, 31 N.Y. 2d 68, 334 N.Y.S. 2d 883, 286 N.E. 2d 263 (1972), concern the necessity of giving fresh warnings before interrogating for a second time a suspect who earlier asserted his right to silence. They are inapplicable to the case at bar in light of our decision that defendant did not indicate that he wished to exercise his right to silence. *Franklin v. State*, 6 Md. App. 572, 252 A. 2d 487 (1969), *cert. denied*, 399 U.S. 912 (1970), is distinguishable on its facts because it concerns the necessity of giving fresh warnings when a second interrogation is begun one to two days after *Miranda* warnings are first given. These decisions are not binding on us, and we do not find them persuasive.

In determining whether *Miranda* warnings given at an initial interrogation are so stale and remote that a substantial possibility exists that the suspect was unaware of his constitutional rights at the time a subsequent interrogation was conducted, the following factors should be considered:

(1) the length of time between the giving of the first warning and the subsequent interrogation; (2) whether the warnings and the subsequent interrogation were given in the same or different places; (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers; (4) the extent to which the subsequent statements

differed from any previous statements; and (5) the apparent intellectual and emotional state of the suspect.

*State v. Artis*, 304 N.C. 378, 382, 283 S.E. 2d 522, 524 (1981).

When these factors are applied to the case at bar it is clear that there is no evidence that defendant was unaware of his rights at the commencement of the second interrogation. The second interrogation began within two and a half hours of the initial warning and defendant stated at the beginning of the second interrogation that he understood his rights. The second interrogation was conducted by the same officer and took place at the same location as the initial interrogation. Defendant's second statement varied from his first only in that he admitted having given a rifle to John Blakemore. Defendant was a high school junior of average intelligence and ability who could read and write and who gave no indication of having mental or emotional problems. The evidence in this case simply is not susceptible of any reasonable interpretation which would suggest that defendant was unaware of or could not understand his rights. Defendant has failed to carry his burden of showing error, and we hold that the trial court properly admitted his custodial statement into evidence.

[3] Defendant next assigns as error the admission of certain hearsay evidence. At trial Frankie Rossus, a friend of John Blakemore, and Ronald Hawkins, Patricia Blakemore's boyfriend, both testified that John Blakemore told them that defendant had given him a .22 caliber semi-automatic rifle to hold until defendant paid off a bet on a football game. Defendant argues that this evidence was admitted in violation of his right to confront the witnesses against him guaranteed by the sixth and fourteenth amendments to the United States Constitution. We disagree.

Hearsay statements may not be admitted into evidence against a criminal defendant absent a showing that the declarant is unavailable. *Ohio v. Roberts*, 448 U.S. 56 (1980); *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971). If the declarant is shown to be unavailable the hearsay statement is admissible only if it is attended by adequate indicia of reliability. *Roberts*, 448 U.S. at 66. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of

particularized guarantees of trustworthiness." *Id.* In the past this Court has held that hearsay evidence is admissible upon a showing of necessity, *i.e.*, unavailability, and a reasonable probability of truthfulness. *Vestal*, 278 N.C. at 582, 180 S.E. 2d at 769; *State v. Davis*, 305 N.C. 400, 420, 290 S.E. 2d 574, 587 (1982).

The only evidence that might indicate that the hearsay is unreliable is the testimony of Linda Cagle, Patricia Blakemore's sister, to the effect that Patricia was afraid of guns and that she had never known of a gun to be in Patricia's house. Defendant speculates that John Blakemore had acquired the gun on his own and said that he was only holding the gun as security for a bet because of his mother's disapproval of firearms. This theory does not square with the evidence in the case. Defendant and John Blakemore were known to bet on football games, and defendant admitted that he had given the rifle to John Blakemore as security for a bet. This evidence strongly corroborates the testimony of Rossus and Hawkins and establishes the truthfulness and reliability of the statements made by John Blakemore. After carefully reviewing the evidence we hold that the hearsay testimony of Rossus and Hawkins meets the requirements of *Roberts* and *Vestal*. Even if it is assumed that admission of the hearsay was error, it was harmless error beyond a reasonable doubt in light of the fact that it merely repeated what defendant had already admitted in his custodial statement.

[4] At the sentencing hearing on the noncapital offenses the trial judge found as a mitigating factor that defendant had no prior arrests or convictions.

The sole aggravating factor found by the trial judge was that "these four offenses were committed within a short time of one another, and that the course of conduct in which defendant committed the first degree murder of Joseph R. Johnson was a part of other crimes involving violence against other persons . . . ."[1] He then found that the aggravating factor outweighed the mitigating factor and thereupon, in addition to the mandatory life sentence in the capital offense, the trial judge imposed consecutive life terms on the two convictions of second degree

---

1. This aggravating factor is found in N.C.G.S. § 15A-2000(e)(11) but is not included in N.C.G.S. § 15A-1340.4. For that reason it is treated as a nonstatutory aggravating factor.

murder and a sentence of twenty years imprisonment on the conviction of assault with a deadly weapon with intent to kill inflicting serious bodily injuries, the latter sentence to run concurrently with the consecutive sentences.

Defendant contends that the trial judge erroneously found and used the single aggravating factor as a basis for the enhancement of the punishment for the convictions in the noncapital offenses. We agree.

In *State v. Lattimore*, 310 N.C. 295, 311 S.E. 2d 876 (1984), the defendant was convicted of attempted robbery with a firearm and second degree murder and given sentences in excess of the presumptive sentence for each crime. The trial judge found as an aggravating factor in the attempted robbery that the defendant had killed the victim. Likewise, in sentencing the defendant for second degree murder the judge found as an aggravating factor that the murder was committed during the course of the attempted armed robbery. *Id.* at 300, 311 S.E. 2d at 880. In remanding for a new sentencing hearing we held that "[t]o permit the trial judge to find as a non-statutory aggravating factor that the defendant *committed* the joinable offense would virtually eviscerate the purpose and policy of . . . ." N.C.G.S. § 15A-1340.4(a)(1)(o). *Id.* at 299, 311 S.E. 2d at 879. Although the *Lattimore* court mistakenly relied on N.C.G.S. § 15A-1340.4(a)(1)(o), which only concerns the use as aggravating factors of *prior* convictions of joinable offenses, the result reached in that case was correct. Recognizing that the result in *Lattimore* was correct, we hold that a conviction of an offense covered by the Fair Sentencing Act may not be aggravated by contemporaneous convictions of offenses joined with such offense.

In the case before us the trial judge did not explicitly use defendant's convictions as aggravating factors. Rather, he relied on defendant's murderous course of conduct in committing the offenses that support the convictions. The State contends that this does not violate the rule of *Lattimore*. We cannot agree. Whatever name is given to it, the effect of the trial judge's action was to use defendant's contemporaneous convictions of joined offenses as an aggravating factor in violation of the rule of *Lattimore*. Of course, a trial judge is not precluded from finding as an aggravating factor that a defendant has engaged in a criminal

course of conduct when such conduct is not the basis of either of the joined offenses.

We also reject the State's contention that *Lattimore* and *State v. Abee*, 308 N.C. 379, 302 S.E. 2d 230 (1983), are in conflict. In *Abee* the defendant was indicted for first and second degree sexual offense. 308 N.C. at 380, 302 S.E. 2d at 231. Pursuant to a plea bargain he pled guilty to one count of second degree sexual offense based on an act of fellatio. *Id.* At sentencing the trial judge found as an aggravating factor that Abee had engaged in repeated acts of fellatio with the victim and had inserted his finger into the victim's rectum. *Id.* at 381, 302 S.E. 2d at 231. The Court upheld the trial judge's finding of the aggravating factors on the basis that only one act of fellatio was needed to support the conviction. *Id.* The remaining acts of fellatio and the insertion of a finger into the defendant's rectum could properly be considered as factors in aggravation because they were not a basis of the offense of which defendant was convicted. *Id.* In *Lattimore* and the case before us the aggravating factors were based on joined offenses of which defendant had been contemporaneously convicted.

Since the trial judge erred in using defendant's commission of joined offenses which were the subject of his contemporaneous convictions as an aggravating factor, this case must be remanded for a new sentencing hearing. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983).

[5] Lastly, defendant assigns as error the imposition of sentence based on a verdict returned by a death qualified jury. This assignment of error is without merit. *See State v. Freeman*, --- N.C. ---, --- S.E. 2d --- (1985).

For the reasons stated there must be a new sentencing hearing on the second degree murder and felonious assault charges. We find no error in the guilt-innocence phase of the case.

No. 83CRS5947 — First degree murder — no error.

No. 83CRS5946 — Second degree murder — new sentencing hearing.

No. 83CRS5945—Second degree murder—new sentencing hearing.

No. 83CRS5902—Assault with a deadly weapon with intent to kill inflicting serious injury—new sentencing hearing.

Justice BILLINGS did not participate in the consideration or decision of this case.