STATE OF NORTH CAROLINA v. DENNIS RAY HAYES

No. 210PA87

(Filed 6 October 1988)

**1. Criminal Law § 138.21— aggravating circumstance—especially heinous burglary—sufficiency of evidence**

There was sufficient competent evidence to support the trial court's finding in aggravation that a first degree burglary was especially heinous, atro-

State v. Hayes

cious, or cruel where such evidence tended to show that defendant, wrapped in a blanket and armed with a firearm, crashed through the victims' bedroom window, landed on the bed where the female victim was sleeping, and immediately threatened to blow her head off if she screamed; defendant and an accomplice held the female victim helpless in the presence of a beating being administered to her husband by another accomplice; and either defendant or one of his accomplices struck the female victim with a flashlight, causing a five-inch wound. This evidence was available to support the trial court's determination since these acts did not constitute another crime or the gravamen of another crime for which defendant was convicted, they were not used as evidence to prove any other aggravating circumstance, and evidence of the egregious manner in which defendant entered the dwelling and defendant's being armed with a firearm was not used to prove an element of the crime of first degree burglary.

2. **Criminal Law § 138.29— aggravating circumstance—pattern of conduct causing danger to society—sufficiency of evidence**

There was sufficient evidence, apart from acts forming the gravamen of convictions for other joined offenses, to support the trial court's finding as a nonstatutory aggravating circumstance for breaking or entering and larceny convictions that defendant engaged in a pattern of conduct causing a serious danger to society where the State's evidence showed that defendant and his two companions first went to the victims' home on 13 December; when the female victim refused to open the door, the three men left and went to a nightclub; while at the nightclub, they consumed quantities of liquor and got into a fight with several other people; during the course of the evening they armed themselves with a sawed-off shotgun; and defendants, while armed and intoxicated, returned a second time to the victims' home on 14 December.

3. **Criminal Law § 138.42— mitigating circumstance—good prison conduct—finding not required**

The trial court did not abuse its discretion in refusing to find defendant's good prison conduct between his commitment and resentencing as a mitigating factor in determining the sentences for all his convictions where defendant's prison record showed that defendant had once engaged in a fight in violation of prison rules and had been disciplined for his involvement. Although the facts concerning defendant's entire prison record might have supported a finding by the trial court that defendant's prison conduct deserved to be considered as a mitigating factor at sentencing, they did not compel such a finding.

ON state's petition for discretionary review pursuant to N.C.G.S. § 7A-31 from an unpublished decision of the Court of Appeals, 85 N.C. App. 349, 355 S.E. 2d 267 (1987), finding error in defendant's sentences entered by *Rousseau, J.*, at the 16 December 1985 Special Session of the Superior Court of WILKES County and remanding for a new sentencing hearing. Argued in the Supreme Court 10 February 1988.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant appellee.*

EXUM, Chief Justice.

This case, here for the second time, presents questions arising under the Fair Sentencing Act, N.C.G.S. § 15A-1340.4 (1983). The first is whether the Court of Appeals correctly decided there was insufficient evidence to support certain aggravating factors found by the trial court. The second is whether the Court of Appeals correctly decided that the trial court erred in not considering as a mitigating factor defendant's good conduct while in prison.

## I.

The facts surrounding the crimes committed are fully and accurately set out in Justice Meyer's opinion for the Court on the first appeal. *See State v. Hayes,* 314 N.C. 460, 462-65, 334 S.E. 2d 741, 743-744 (1985). This statement of the facts has been adopted by both the state and the defendant in their respective briefs. We will not repeat the statement of facts as set out in the first appeal *verbatim*, but will instead summarize it as follows, adding some matters that appear in the trial transcript.

On 13 December 1981 defendant, Carlton Roberts and Windell Flowers went to the home of Thomas and Clara Greer in the town of Boomer, Wilkes County, where the Greers had for some 42 years operated a small country store known as Boomer Service and Grocery. Their home was behind the store. One of the men knocked on the door, but Mrs. Greer, age 76, would not let him in because her husband, age 81, was asleep. The three men left and drove to Lenoir, where they obtained a blanket and a sawed-off shotgun. While in Lenoir, they went to a nightclub where they consumed liquor and got into a fight with several others.

They returned to the Greer home on 14 December 1981. Hayes wrapped the blanket over his head and crashed through the Greers' bedroom window. Roberts and Flowers followed defendant through the same window. According to Mrs. Greer's tes-

timony, she was asleep in bed when she heard a crash and felt someone land beside her on the bed. As she lay helpless in the bed, she heard someone say, "If you holler or if you scream I'll blow your head off."

Roberts then grabbed Mr. Greer and began beating him with a blunt object. Roberts demanded that Mr. Greer reveal where his money was hidden. Mrs. Greer testified, "I could hear him a-beating the whole time . . . . I just heard that old beating sound . . . ." Hayes and Flowers grabbed Mrs. Greer, held a pistol to her neck, struck her over the head with a flashlight causing a five-inch wound and demanded that she tell where she and her husband kept their money. While two of the assailants continued to hold Mrs. Greer, the other searched a bedroom where he found a wallet containing between $800.00 and $1,000.00. Mrs. Greer showed Flowers an envelope containing $1,000.00 under a rug in another bedroom.

While Roberts continued to beat Mr. Greer, Mrs. Greer led Hayes and Flowers outside, telling them there might be money hidden in a playhouse in the yard. She attempted to escape, but Hayes caught her and threw her to the ground. Mrs. Greer then led the men to the store where, after tying her, they took a number of items, including two cases of cigarettes, a watch and a .22 caliber Luger pistol. The three men left in a white Chevrolet.

Mrs. Greer was able eventually to free herself and go to her granddaughter's home. Her granddaughter called the sheriff and other family members. The Greers' son-in-law, Clay Bradford, being the first to arrive at the crime scene, found Mr. Greer alive and tied to the foot of his bed, his face beaten so badly that Bradford had difficulty recognizing him.

Hayes returned to his mobile home about 6:30 a.m. He sat on the bed and cried, saying, "I'll not never [sic] go out on another deal as long as I live. You should have seen what we did to that old man last night."

Mr. Greer died on 1 January 1982 from injuries, including extensive brain damage, resulting from the brutal beating inflicted by his assailants.

Mrs. Greer was unable to identify any of the assailants. However, further investigation unearthed evidence, including the

sale of some of the stolen property by Flowers, which led to their arrest and, ultimately, to incriminating statements by Flowers and Hayes.

At the 21 June 1982 Special Criminal Session of Superior Court, Iredell County, Hayes, Flowers and Roberts were tried and convicted of: (1) first degree murder of Mr. Greer upon a felony murder theory, the underlying felony being the armed robbery of Mr. and Mrs. Greer; (2) armed robbery of Mr. and Mrs. Greer; (3) first degree burglary of the Greer dwelling house, the indictment alleging that the dwelling was owned by Mr. Greer and occupied by Mr. and Mrs. Greer and that the felonious intent was to commit armed robbery; (4) second degree kidnapping of Mrs. Greer for the purpose of facilitating the commission of the felonies of breaking or entering and larceny; (5) felonious breaking or entering with intent to commit larceny of the building occupied by Boomer Service and Grocery and owned by Mr. Greer; and (6) felonious larceny from this building of Mr. Greer's personal property.

At sentencing the jury recommended, and the trial judge imposed, a sentence of life imprisonment on the first degree murder convictions. Armed robbery being the underlying felony in these convictions, judgments on the armed robbery convictions were arrested. As to the non-capital crimes, the trial judge found that each was aggravated as being: (1) especially heinous, atrocious, or cruel; (2) against a very old victim; (3) for pecuniary gain; and (4) part of a pattern of conduct posing a serious threat to society. Each defendant received the maximum 50-year sentence for the Class C felony of first degree burglary; the maximum 30-year sentence for the Class E felony of second degree kidnapping; and the maximum 10-year sentence for the Class H felonies, consolidated for judgment, of breaking or entering and larceny. The sentences for the non-capital crimes were ordered to run consecutively to each other but not with the life sentence imposed in the murder case.

Hayes, Flowers and Roberts appealed to this Court. We found no error in the determinations of guilt but remanded all convictions other than the Class A felony of first degree murder for resentencing, holding that the pecuniary gain aggravating factor had been improperly found. *State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 781.

At the resentencing hearing the trial court found, as to Flowers and Hayes, that: (1) the burglary was especially heinous, atrocious, or cruel; (2) the kidnapping was against a very old victim; and (3) the breaking or entering and larceny were part of a pattern of conduct which was a serious threat to society. The trial court found no mitigating factors and resentenced both defendants to the same consecutive sentences of fifty years for first degree burglary, thirty years for second degree kidnapping, and a consolidated ten-year sentence for breaking or entering and larceny. Again the total of 90 years imprisonment ordered to be served for these crimes was not ordered to run consecutively to the sentence of life imprisonment earlier imposed in the murder case.

Defendant Flowers appealed separately to the Court of Appeals, contending, among other things, that the trial court erred in finding: (1) the burglary was especially heinous, atrocious, or cruel; and (2) the breaking or entering and larceny was part of a pattern of behavior which constituted a serious threat to society. The Court of Appeals concluded the trial court erred in finding both aggravating factors and remanded for a new sentencing hearing. *State v. Flowers*, 83 N.C. App. 696, 354 S.E. 2d 240, *disc. rev. denied*, 319 N.C. 675, 356 S.E. 2d 702 (1987).

Defendant Hayes appealed separately to the Court of Appeals, contending: (1) there was insufficient evidence to support the trial court's finding in aggravation that the burglary was especially heinous, atrocious, or cruel; (2) there was insufficient evidence to support the trial court's finding in aggravation that the breaking or entering and larceny were part of a pattern of conduct which was a serious threat to society; and (3) the trial court erred in failing to find as a mitigating factor that defendant had exhibited good behavior in prison since his commitment in 1982.

The Court of Appeals concluded the first two issues raised by defendant Hayes were identical to those raised by defendant Flowers and, on the basis of *Flowers*, remanded the case for a new sentencing hearing. The Court of Appeals also concluded the trial court erred by "failing to consider whether [Hayes'] conduct in prison between his initial incarceration and resentencing entitled [Hayes] to a nonstatutory" mitigating factor.

We granted the state's petition for discretionary review.

## II.

[1]   The state contends the Court of Appeals erred in concluding there was insufficient evidence to support the trial court's finding in aggravation that the burglary of the Greer home was especially heinous, atrocious, or cruel pursuant to N.C.G.S. § 15A-1340.4 (a)(1)f. The state asserts the trial judge in making the finding could have properly considered that defendant: (1) hurled himself through the Greers' bedroom window, landing on Mrs. Greer's bed where she was sleeping; (2) wounded Mrs. Greer with a flashlight; and (3) forced Mrs. Greer to witness the brutal beating of her husband. These facts, the state says, are sufficient to support the "especially heinous" aggravating factor. Defendant responds that, as a matter of law, the trial judge could not properly consider this evidence to aggravate the burglary conviction because it was used to prove other joined offenses of which defendant was convicted.

The Fair Sentencing Act and our cases interpreting it establish several rules which determine what evidence a sentencing judge may properly consider in aggravating a crime covered by the Act. First, a conviction may not be aggravated by prior convictions of other crimes which could have been joined for trial or by a contemporaneous conviction of a crime actually joined by or acts which form the gravamen of these convictions. N.C.G.S. § 15A-1340.4(a)(1)o (1983); *State v. Westmoreland*, 314 N.C. 442, 334 S.E. 2d 223 (1985); *State v. Lattimore*, 310 N.C. 295, 311 S.E. 2d 876 (1984). Second, evidence used to prove an element of a crime may not also be used to prove a factor in aggravation of that *same* crime. N.C.G.S. § 15A-1340.4(a)(1)p (1983); *State v. Withers*, 311 N.C. 699, 319 S.E. 2d 211 (1984); *State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783 (1983). Third, "the same item of evidence may not be used to prove more than one factor in aggravation." N.C.G.S. § 15A-1340.4(a)(1)p (1983). Fourth, acts which could have been, but were not, the basis for other joinable criminal convictions may be used to aggravate the conviction for which defendant is being sentenced. *State v. Abee*, 308 N.C. 379, 302 S.E. 2d 230 (1983). Finally, *evidence* used in proving an element of one crime may also be used to support an aggravating factor of a separate, though joined, crime for which defendant is being sentenced. *State v. Taylor*, 322 N.C. 280, 367 S.E. 2d 664 (1988).

To decide whether there was enough competent evidence to support the trial court's finding of the especially heinous factor, by which it aggravated defendant's burglary conviction, we must first ascertain, under the rules above set out, what evidence the trial court could properly consider. Second, we must determine whether this evidence supports the finding of this factor.

Evidence which the trial court could properly consider in determining whether the burglary was especially heinous, atrocious or cruel is this: Hayes, wrapped in a blanket and armed with a firearm, crashed through the Greers' bedroom window, landed on the bed where Mrs. Greer was sleeping and immediately threatened to blow her head off if she screamed. Hayes and Flowers held Mrs. Greer helpless in the presence of the beating being administered to her husband by Roberts. Mrs. Greer "could hear him a-beating the whole time . . . . I just heard that old beating sound . . . ." Either Hayes or one of his accomplices struck Mrs. Greer with a flashlight, causing a five-inch wound. These acts constitute neither another crime nor the gravamen of another crime for which Hayes was convicted. They were not used as evidence to prove any other aggravating circumstance. With regard to the burglary itself, the state was required to prove that defendant entered the dwelling; but the egregious manner in which the entry occurred and defendant's being armed with a firearm are superfluous to the entry itself. All of the evidence described is, therefore, available to support the trial court's determination.

We think this evidence is enough to support the finding that the burglary was especially heinous, atrocious or cruel. In determining if this aggravating factor is present in a non-capital, Fair Sentencing Act case, "the focus should be on whether the facts of the case disclose . . . *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense." State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E. 2d 783, 786 (emphasis in original). The crime sought to be aggravated by this factor is first degree burglary. This crime is complete upon the breaking and entry into the occupied dwelling house of another in the nighttime with the intent to commit a felony therein, "whether such intent be executed or not." *State v. Beaver*, 291 N.C. 137, 141, 229 S.E. 2d 179, 181 (1976). The kind of suffering, both physical and psychological, that Mrs. Greer endured at the hands of Hayes and his accomplices concomitantly

with the burglary is not ordinarily present when a burglary is committed. The burglary here was excessively brutal. It was proper for the trial court to find that it was especially heinous, atrocious, or cruel.

## III.

[2] The state next argues the Court of Appeals erred in concluding there was insufficient evidence to support the trial court's finding in aggravation of the breaking or entering and larceny convictions that defendant "engaged in a pattern of conduct causing serious danger to society," a nonstatutory factor. We agree with the state's contention.

Defendant asserts that, in finding this aggravating factor, the trial court violated the rules set forth in *State v. Westmoreland*, 314 N.C. 442, 334 S.E. 2d 223, and *State v. Lattimore*, 310 N.C. 295, 311 S.E. 2d 876. In *Lattimore*, the defendant was convicted of attempted robbery with a firearm and second degree murder. In sentencing defendant for the attempted robbery conviction, the trial court found as an aggravating factor that defendant had killed the victim. Likewise, in sentencing defendant for the second degree murder conviction, the trial court found as an aggravating factor that the murder was committed during the course of the attempted armed robbery. *Lattimore*, 310 N.C. at 300, 311 S.E. 2d at 880. This Court held the trial court erred in finding as nonstatutory aggravating factors for each respective conviction that the defendant *committed*, respectively, the joined offenses. *Id.* at 299, 311 S.E. 2d at 879. In *Westmoreland*, the defendant was convicted of first degree murder, two counts of second degree murder, and assault with a deadly weapon with intent to kill inflicting serious injury. The trial court aggravated each non-capital offense by finding defendant had been engaged in a course of conduct involving violence against others. In remanding for a new sentencing hearing, this Court stated:

> [W]e hold that a conviction of an offense covered by the Fair Sentencing Act may not be aggravated by contemporaneous convictions of offenses joined with such offense. In the case before us the trial judge did not explicitly use defendant's convictions as aggravating factors. Rather he relied on defendant's murderous course of conduct in committing the offenses that support the convictions. . . . Whatever name is

given to it, the effect of the trial judge's action was to use defendant's contemporaneous convictions of joined offenses as an aggravating factor in violation of the rule of *Lattimore.*

*Westmoreland,* 314 N.C. at 449, 334 S.E. 2d at 228.

Under the rules set forth in *Westmoreland* and *Lattimore,* a conviction for which defendant is being sentenced may not be aggravated by defendant's acts which form the gravamen of contemporaneous convictions of joined offenses. However, evidence of acts unrelated to the joined convictions may properly be considered. *See, e.g., State v. Avery,* 315 N.C. 1, 337 S.E. 2d 786 (1985) (trial court properly found defendant had engaged in a pattern or course of violent conduct where evidence showed defendant had committed unrelated acts of violence).

Defendant contends there is insufficient evidence, apart from acts forming the gravamen of convictions for other joined offenses, to support the trial court's finding that he engaged in a pattern of conduct which presented a serious threat to society.

We disagree. The state's evidence showed defendant and his companions first went to the Greer home on 13 December 1981. When Mrs. Greer refused to open the door, the three men left and went to a nightclub. While at the nightclub, they consumed quantities of liquor and got into a fight with several other people. During the course of the evening they armed themselves with a sawed-off shotgun. Armed and intoxicated, they returned a second time to the Greer home on 14 December 1981. This evidence, all unrelated to the other crimes for which defendant was convicted, is enough to support the trial court's finding in aggravation that defendant engaged in a pattern of conduct causing serious danger to society.

IV.

[3] In its final argument the state contends the Court of Appeals wrongly concluded that the trial court erred in failing to find defendant's prison conduct to be a mitigating factor in determining what sentences to impose for all his convictions. Again we agree with the state.

A defendant's good behavior while in prison may properly be considered by the trial court as a mitigating factor. *State v. Swimm,* 316 N.C. 24, 340 S.E. 2d 65 (1986). In *Swimm* we stated:

> A defendant's behavior while incarcerated is relevant to a determination of his potential for rehabilitation and is thus a factor 'reasonably related to the purposes of sentencing.' Therefore, we hold that a defendant's good conduct while incarcerated during the period from his conviction until the time of his resentencing hearing may, in the discretion of the trial judge, be found as a nonstatutory mitigating factor under the Fair Sentencing Act.

*Id.* at 31, 340 S.E. 2d at 70.

At the resentencing hearing defense counsel proposed as a mitigating factor that defendant had exhibited good behavior in prison since being committed in 1982. Counsel pointed out that defendant had one infraction in June of 1983 but had been well-behaved since that time and produced, but did not offer into evidence, defendant's entire 450-page prison file. The 1983 infraction, according to counsel's statement, involved a fight with another inmate for which defendant was disciplined with 15 days' segregation and 15 days' loss of good time. Judge Rousseau declined to read the file but stated, "I will take your word for what you say the prison records reveal in behalf of your client, Mr. Gray." He then stated:

> Well, Mr. Gray, you're talking about the mitigating factor of good behavior in prison — of course everybody knows that we have a parole policy in this state, and the better conduct the prisoner has, then the better chance of parole, the better chance that he will make parole earlier. . . . Whether that's his motive, I don't know . . . .

Later, when actually imposing sentences for the various convictions, Judge Rousseau said, "After considering the request . . . for a mitigating factor of a confession at an early stage and a good prison record, I decline to find those two mitigating factors. . . . After considering the request for mitigating factors, the Court *in its discretion* declines to find either the confession at an early stage or good prison record. . . . I decline to find any mitigating factors requested by the Defendant." (Emphasis supplied.)

The Court of Appeals believed that Judge Rousseau determined as a matter of law that good conduct in prison could never

be a mitigating factor because it might be entirely motivated by the inmate's self-serving desire for early release. The Court of Appeals concluded that, under *Swimm*, this was a misapprehension of applicable law and remanded for a new sentencing hearing at which the sentencing court could determine in its discretion whether this mitigating factor ought to be found.

We disagree with the Court of Appeals' interpretation of the record at sentencing. It seems to us that Judge Rousseau did not reject out of hand and as a matter of law defendant's prison conduct as a mitigating factor. Rather he determined, in his discretion, not to find it. We find no reversible error in this determination.

The standard of review on appeal of the sentencing court's failure to find a nonstatutory mitigating factor is whether the court abused its discretion. *State v. Spears*, 314 N.C. 319, 333 S.E. 2d 242 (1985). Failure to find a nonstatutory mitigating factor "will not be disturbed on appeal absent a showing of abuse of discretion." *Id.* at 323, 333 S.E. 2d at 244. A ruling committed to the trial court's discretion will be upset on appeal only when defendant shows that the ruling could not have been the result of a reasoned decision. *State v. Cameron*, 314 N.C. 516, 335 S.E. 2d 9 (1985).

While the facts concerning defendant's prison record were not in dispute, they did not show a record devoid of bad behavior. Instead they showed that defendant, in violation of prison rules, had once engaged in a fight and had been disciplined for his involvement. The facts concerning defendant's entire prison record might have supported a finding by the trial court that defendant's prison conduct deserved to be considered as a mitigating factor at sentencing, but they do not compel such a finding. The trial court's rejection of the factor was not without rational basis in the record. It was not, therefore, an abuse of discretion.

The decision of the Court of Appeals vacating the sentences imposed and remanding for a new sentencing hearing is reversed and the sentences imposed by the trial court are reinstated.

Reversed.