STATE OF NORTH CAROLINA v. NATHANIEL WILLIAMS

No. 9312SC985

(Filed 6 September 1994)

**1. Searches and Seizures § 48 (NCI4th)— warrantless search of crime scene—seized evidence admissible**

In a prosecution for second-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury, the trial court did not err in admitting evidence seized from defendant's residence, where the crimes occurred, pursuant to an emergency warrantless search which closely followed an initial sweep by the first responding officers.

**Am Jur 2d, Searches and Seizures §§ 174-179.**

**Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of, arrest and search. 19 ALR3d 727.**

**2. Criminal Law § 767 (NCI4th); Homicide § 678 (NCI4th)— assault with deadly weapon—defendant's diminished capacity—refusal to instruct error**

The trial court erred by denying defendant's request to instruct the jury to consider the principle of diminished capacity in evaluating the charge of assault with a deadly weapon with intent to kill inflicting serious injury, since experts testified that defendant was incapable of forming the specific intent to kill, and defendant specifically requested such instruction; however, the

court did not err in denying defendant's request to instruct the jury to consider the principle of diminished capacity with respect to the element of malice in second-degree murder.

**Am Jur 2d, Homicide § 516; Trial §§ 1270 et seq.**

3. **Criminal Law § 1171 (NCI4th)— drugs found at crime scene—aggravating sentencing factor**

The trial court in a prosecution for second-degree murder and assault with a deadly weapon did not err by considering the unusually large amount of drug contraband found at the crime scene as an aggravating factor in sentencing defendant.

**Am Jur 2d, Criminal Law §§ 598, 599.**

4. **Criminal Law § 1189 (NCI4th)— aggravation of sentence— evidence supporting joined offense—consideration error**

The trial court erred in using evidence supporting a joined offense in aggravation of defendant's consolidated sentence.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR2D 768.**

5. **Criminal Law § 1067 (NCI4th)— sentencing proceeding— consideration of victim impact statements not error**

The trial court did not commit reversible error by allowing victim impact statements as to sentence.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Appeal by defendant from judgment signed 2 May 1993 by Judge E. Lynn Johnson in Cumberland County Superior Court. Heard in the Court of Appeals 7 June 1994.

On 1 February 1993, defendant was tried and convicted of second-degree murder (G.S. 14-17) and assault with a deadly weapon with intent to kill inflicting serious injury (G.S. 14-32(a)). The trial court consolidated the charges for judgment and sentenced defendant to a thirty-five year prison term.

The State's evidence tended to show the following: On 11 October 1988, two Fayetteville Police Department officers responded to an emergency call at 3:39 p.m. directing them to defendant's residence.

STATE v. WILLIAMS

[116 N.C. App. 225 (1994)]

The officers found defendant pacing in the front yard and victim Steven Montgomery lying wounded in the doorway of the residence. Defendant told the officers that a man had shot his wife and was fleeing through the woods.

The officers radioed for emergency personnel and then entered the residence to check for other victims or suspects. They found the defendant's wife lying dead on a couch, with a gunshot wound above her left ear. The two officers then quickly conducted a sweep of the residence. Near the kitchen, they found a small pistol leaning against a wall. In the den where defendant's wife's body had been found, the officers found spent ammunition casings and a white, rock-like substance on top of a stereo. The initial responding officers then left the house but secured it against intruders. No one was allowed to enter the residence until the Police Department investigators arrived about fifteen minutes after the first two officers arrived. The investigators entered the house and continued to search the premises. They (the investigators) observed the items seen by the first two officers and in addition observed the following: an empty gun holster; a used condom on the floor; a bag containing 5.2 grams of heroin, victim Steven Montgomery's identification, and clothing; a denim jacket draped over a bag containing 8.2 grams of heroin; a live bullet; an ammunition clip; and a bullet hole in the wall. Two police identification officers made a videotape, took pictures, drew diagrams, and collected the evidence discovered by the other officers. Later, officers returned for another search after obtaining the consent of the defendant. All searches of defendant's residence were conducted without a search warrant.

Regarding defendant's mental state at the time of the murder, a psychiatrist from Dorothea Dix testified that defendant's actions on the day of the murder, as well as his medical examinations, produced no "findings that would indicate he (defendant) did not know that his alleged actions would be wrongful, or that he did not know the nature of his actions." The doctor did find that the defendant suffers from a mental illness he described as a mixed personality disorder with "narcissistic, histrionic features, as well as paranoid features."

Defendant's evidence did not contradict the State's evidence except regarding defendant's mental condition. Defendant's evidence tended to show the following: Defendant suffers from right brain damage resulting in impaired nonverbal skills including problem-solving ability, reasoning, and judgment. The brain damage could

have resulted from a car wreck, two army parachuting accidents, or a chemical imbalance in defendant's brain. In addition, defendant suffers from a bipolar (manic-depressive) disorder. Defendant's medical experts testified that as a result of his mental dysfunctions, defendant did not have the ability to form the specific intent to kill on the day of the shootings.

Following a hearing, the trial judge ruled on 15 November 1990 that defendant did not "knowingly, voluntarily, and understandingly" consent to the allegedly consensual search. Accordingly, the trial court suppressed evidence seized pursuant to the last search. However, the court allowed all evidence obtained during the earlier searches, concluding that "the officers had a legal right to sweep the premises and seize anything in plain view . . . ."

*Attorney General Michael F. Easley, by Assistant Attorney General David M. Parker and Associate Attorney General Thomas O. Lawton, III, for the State.*

*Public Defender Malcolm Ray Hunter, Jr., by Assistant Public Defender Benjamin Sendor, for the defendant-appellant.*

EAGLES, Judge.

Defendant brings forward five assignments of error. After careful consideration, we find no error in the admission of evidence seized pursuant to an emergency warrantless search which closely followed an initial sweep by the first responding officers. We also find no error in: 1) refusing to instruct the jury to consider diminished capacity in evaluating malice, 2) aggravating defendant's sentence because of the large quantity of drugs found at the crime scene, and 3) admitting victim impact statements as to sentence. We find the trial court erred in: 1) refusing to instruct the jury to consider defendant's diminished capacity in evaluating the specific intent element of assault with a deadly weapon with intent to kill inflicting serious injury and 2) using evidence supporting a joined offense in aggravation of defendant's consolidated sentence. Accordingly, we reverse and remand for a new trial on the charge of assault with a deadly weapon with intent to kill inflicting serious injury and we vacate the sentence and remand for resentencing on the second degree murder conviction.

I. Propriety of Warrantless Search

[1] Defendant contends that the trial court erred in allowing the admission of evidence seized by law enforcement officers pursuant to

warrantless searches of defendant's residence. Defendant argues that the searches violate his constitutional protection against unreasonable search and seizure. We disagree.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. *See also* N.C. Const. Art. I, § 19. Decisions of the United States Supreme Court require that the police obtain a search warrant before searching a home "subject only to a few specifically established and well delineated exceptions." *Thompson v. Louisiana,* 469 U.S. 17, 19-20, 83 L.Ed.2d 246, 250 (1984), *quoting Katz v. United States,* 389 U.S. 347, 357, 19 L.Ed.2d 576, 585 (1967). In creating exceptions to the general rule, the Court must consider the "balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Mincey v. Arizona,* 437 U.S. 385, 406, 57 L.Ed.2d 290, 309 (1978) (Rehnquist, J., *concurring*) *quoting United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 45 L.Ed.2d 607, 615 (1975).

In *Mincey v. Arizona, supra,* the United States Supreme Court refused to create a blanket "murder scene exception" to the general rule requiring a search warrant. However, the Court reaffirmed the right of police to conduct a warrantless search and seizure when an emergency exists. The *Mincey* Court stated:

> We do not question the right of police to respond to emergency situations . . . . The Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises . . . . And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities.

*Id.* at 392-93, 57 L.Ed. at 300 (1978) (*citations omitted*).

In *Thompson v. Louisiana, supra,* the U.S. Supreme Court, citing *Mincey, supra,* reversed the Louisiana Supreme Court. The Louisiana Court had unsuccessfully attempted to distinguish *Thompson* from *Mincey* by noting that *Mincey* involved a four day search of the premises, while the search in Thompson began thirty-five minutes after the defendant was taken from her home and only lasted for two

hours. The U.S Supreme Court held that the later warrantless search in *Thompson* was not justified by emergency circumstances.

Unlike *Thompson*, the investigators here quickly responded to the dispatcher's call and arrived within fifteen minutes after the initial responding officers first reached the scene. During the time it took the investigators to arrive, the initial responding officers: 1) encountered the defendant in the front yard and a wounded victim on the front porch, 2) entered the house and conducted a thirty second inspection during which they found a deceased second victim in the den, and 3) secured the scene against intruders. The investigators arrived shortly after the initial thirty second sweep by the first responding officers. Responding to the ongoing emergency, the investigators conducted a more complete search of the premises which could have revealed additional victims or hiding suspects. In contrast to the ongoing police response here, the investigators in *Thompson* arrived thirty-five minutes after the first officers on the scene had already searched the home, secured the scene, and sent the defendant to the hospital.

We hold that the law enforcement officers' actions here comply with *Mincey* and *Thompson* which allow warrantless searches in emergency circumstances to determine if there are other victims or suspects still on the premises. To hold otherwise would result in a rule that once any law enforcement officer makes an initial sweep through a home no matter how hurried or brief it may be, no other officers may search the home until a search warrant is obtained. Such a rule ignores the fact that the first responding officers making a quick initial search of a home may overlook a victim or suspect located in less obvious places.

During the course of their emergency activities, law enforcement officers may seize evidence in "plain view." *Mincey v. Arizona*, 437 U.S. at 392-93, 57 L.Ed. at 300. Here, all of the seized evidence was in plain view during the ongoing emergency activities conducted by the law enforcement officers. It is irrelevant that some of the items seized were not noticed by the initial responding officers since all of the law enforcement officers acted pursuant to an emergency. Accordingly, this assignment of error fails.

## II. Jury Instructions

[2] A. Defendant next contends that the trial court erred by denying his request to instruct the jury to consider the principle of diminished

STATE v. WILLIAMS

[116 N.C. App. 225 (1994)]

capacity in evaluating the charge of assault with a deadly weapon with intent to kill inflicting serious injury (G.S. 14-32). We agree.

Defendant requested the following instruction:

> In order to convict the defendant of Assault with a Deadly Weapon With Intent to Kill Inflicting Serious Injury, the State is required to prove to the jury from the evidence beyond a reasonable doubt that the defendant unlawfully assaulted Steven Montgomery and that he did so in execution of an actual, specific intent to kill.

> Thus, before the jury may find the defendant guilty of Assault with a Deadly Weapon With Intent to Kill Inflicting Serious Injury, it must first find whether the State has proved beyond a reasonable doubt that Nathaniel Williams was, first, capable of forming a specific intent to kill and, second, did form the specific intent to kill within the meaning of our law. The jury must consider, in determining the answer to these two questions, the evidence of the defendant with regard to his mental condition at the time of the alleged offense. In other words, the defendant's evidence with regard to his mental condition is a circumstance which must be considered in determining whether or not the State has proved beyond a reasonable doubt that Nathaniel Williams was (1) capable of forming the specific intent to kill and (2) did form the specific intent to kill Steven Montgomery.

The defense of diminished capacity applies to the element of specific intent to kill which is an essential element of assault with a deadly weapon with intent to kill inflicting serious injury. *State v. Daniel*, 333 N.C. 756, 429 S.E.2d 724 (1993). Our Supreme Court held in *State v. Rose*, 323 N.C. 455, 373 S.E.2d 426 (1988), that the trial court committed reversible error in refusing to instruct the jury to consider the defendant's mental condition in connection with his ability to form a specific intent to kill. Instead, the trial judge gave the pattern instruction which explains intent as a state of mind or mental attitude which may be inferred from surrounding circumstances rather than by direct evidence. In ordering a new trial, the *Rose* Court stated:

> [T]he trial court properly allowed . . . testimony that . . . defendant could not form the specific intent to kill . . . . Defendant was entitled to have the jury consider this testimony in determining whether he in fact premeditated and deliberated the murder of the two victims. It follows, therefore, that since the testimony

was before the jury, defendant was entitled to a jury instruction on this element of the crimes. See N.C.G.S. 15A-1232 (1987).

*Id.* at 458, 373 S.E.2d at 428 (1988).

Here, as in *Rose*, experts testified that defendant was incapable of forming the specific intent to kill. The trial court then refused to instruct the jury that it should consider defendant's mental condition in determining whether he formed the specific intent to kill. Instead, the trial court gave the pattern jury instruction which defined intent to kill in the same way as the *Rose* trial court instructed the jury. Accordingly, we hold the trial court erred in failing to instruct the jury that it should consider the defendant's mental condition in determining whether he formed the specific intent to kill.

The State argues that flaws in defendant's proposed instruction relieved the trial court of the obligation to instruct the jury on diminished capacity. Specifically, the State objects to the use of the word "must" in the proposed instruction. The State's argument is unpersuasive. A trial judge is not obliged to choose between using a jury instruction exactly as proposed or not at all. A judge is only required to instruct the jury in "substantial conformity to the requested instruction" when the proposed instruction is supported by the evidence. *Id.*

Because defendant's state of mind was a crucial issue in the charge of assault with a deadly weapon with intent to kill inflicting serious injury, a reasonable possibility exists that absent the error the jury would have reached a different result. G.S. 15A-1443(a); *see State v. Rose, supra.* Accordingly defendant is entitled to a new trial on the charge of assault with a deadly weapon with intent to kill inflicting serious injury.

B. Defendant next argues that the trial court erred by denying his request to instruct the jury to consider the principle of diminished capacity with respect to the element of malice in second degree murder (G.S. 14-32). We disagree. In the single case cited, *State v. Holder*, 331 N.C. 462, 418 S.E.2d 197 (1992), the Court focused on the adequacy of the jury instruction regarding the impact of defendant's mental state on his ability to form a specific intent to kill and to premeditate, but did not discuss the need for an instruction on the defendant's mental state and the existence of malice. Accordingly, this assignment of error fails.

### III. Sentencing

**[3]** A. Defendant next argues that the trial court erred by considering the unusually large amount of drug contraband found at the crime scene as an aggravating factor in sentencing defendant. We disagree.

An aggravating factor exists when the "offense involved an unusually large quantity of contraband." G.S. 15A-1340.4(a)(1)(m). As this Court has noted, "the trial court <u>must</u> consider all circumstances that are both transactionally related to the offense and reasonably related to the purpose of sentencing . . . ." *State v. Flowe*, 107 N.C. App. 468, 472, 420 S.E.2d 475, 477-78 (1992) *(citations omitted) (emphasis added)*. Defendant's own witness established that defendant and victim Steven Montgomery bagged up heroin at a motel in Wilmington, North Carolina, before returning to Fayetteville on the morning of the day of the shootings. The victim Montgomery's suitcase containing 5.2 grams of heroin was found in defendant's living room. Another 8.2 grams of heroin was found in a bag under a jacket. We hold this evidence meets the statutory criteria that defendant's offenses "involved an unusually large quantity of contraband." Accordingly, this assignment of error fails.

**[4]** B. Defendant also argues that the trial court erred in finding his "course of conduct" a nonstatutory aggravating factor. The State concedes that the trial court erred. We agree. The trial court stated:

> [T]he offenses for which the defendant stands convicted was [sic] part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against other person or persons.

A sentencing judge may not use a joined or joinable offense in aggravation. *State v. Rose, supra*; *State v. Westmoreland*, 314 N.C. 442, 334 S.E.2d 223 (1985); *State v. Lattimore*, 310 N.C. 295, 311 S.E.2d 876 (1984). *See* G.S. 15A-1340.4(a)(1)(o) (1983). This prohibition applies to both convictions for joined offenses and to the acts which form the substance of those joined offenses. *State v. Hayes*, 323 N.C. 306, 372 S.E.2d 704 (1988). Our Supreme Court explained in *Hayes*:

> [T]he trial judge did not explicitly use defendant's convictions as aggravating factors. Rather he relied on defendant's murderous course of conduct in committing the offenses that support the convictions . . . . Whatever name is given to it, the effect of the trial judge's action was to use defendant's contemporaneous

convictions of joined offenses as an aggravating factor in violation of *Lattimore.*

*Id.,* 323 N.C. at 314, 372 S.E.2d at 709, *quoting State v. Westmoreland,* 314 N.C. at 449, 334 S.E.2d at 228. Accordingly, defendant must be resentenced.

### IV.

**[5]** Finally, defendant contends that the trial court erred by allowing prosecution witnesses who are members of the victim's family to advocate regarding the length of sentence which defendant should receive. We find no reversible error. While receiving victim impact statements advocating a sentence is "a practice not to be encouraged," this Court has held that the practice does not constitute reversible error. *State v. Jackson,* 91 N.C. App. 124, 125, 370 S.E.2d 687, 688 (1988). Accordingly, this assignment of error fails.

### V.

For the reasons stated, we hold defendant is entitled to a new trial on the charge of assault with a deadly weapon with intent to kill inflicting serious injury on Steven Montgomery and a new sentencing hearing for the second-degree murder of Loretta Williams.

No error in part; vacated and remanded for resentencing in part; new trial in part.

Judges COZORT and LEWIS concur.