STATE OF NORTH CAROLINA v. LEOPOLDO TORRES

No. 470A87

(Filed 2 June 1988)

**1. Constitutional Law § 31 — interpreter for defendant — qualifications**

The trial court was properly within its discretion in appointing and continuing to use a certain person as interpreter for defendant, who neither spoke nor understood English, where the evidence showed that the interpreter's native tongue was Spanish; he had taken five years of English during high school; he had recently taken English courses at Wilkes Community College; he had passed the GED exam given in English; he had received a degree in electronics technology at Wilkes Community College; he was at the time of trial employed at a discount store as hardware department manager; and he had previously acted as a courtroom interpreter in North Carolina.

**2. Criminal Law § 169.3 — homicide — victim's threat to defendant — evidence excluded — similar evidence admitted**

Defendant was not prejudiced by the trial court's exclusion of a statement made by the victim two weeks before his death concerning his intent to buy a gun and kill defendant, since defendant presented three witnesses who testified that the victim had threatened to harm defendant; defendant testified

that the victim had threatened him with a gun sometime before the fatal shooting; and numerous witnesses testified that the victim was known to carry a gun and that he had an assaultive and abusive character.

**3. Criminal Law § 138.21— aggravating circumstance of heinous, atrocious, or cruel murder—insufficiency of evidence**

The evidence did not support a finding that a murder was especially heinous, atrocious, or cruel where the evidence tended to show that the defendant emptied his pistol by firing shots at close range in rapid succession into the victim's head and chest, killing him instantly, and this evidence did not show that the victim suffered psychologically or physically in a manner not normally present in other second degree murders, nor did the evidence show that the murder was excessively brutal or dehumanizing when compared to other second degree murders. N.C.G.S. § 15A-1340.4(a)(1)f (1983).

APPEAL as of right by the defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Gray, J.*, at the 11 May 1987 Criminal Session of Superior Court, WILKES County. Heard in the Supreme Court on 11 May 1988.

*Lacy H. Thornburg, Attorney General, by David F. Hoke, Associate Attorney General,* for the State.

*Malcolm Ray Hunter, Jr., Appellate Defender, by David W. Dorey, Assistant Appellate Defender,* for the defendant appellant.

MITCHELL, Justice.

The defendant was tried upon a proper bill of indictment charging him with first-degree murder. A jury found the defendant guilty of second-degree murder, and the trial court entered judgment sentencing the defendant to life imprisonment. The defendant appealed to this Court pursuant to N.C.G.S. § 7A-27(a).

The defendant has brought forward assignments of error relative to the guilt-innocence phase and the sentencing phase of his trial. Having reviewed his assignments, we hold that the guilt-innocence phase of the defendant's trial was free from reversible error. We conclude that error was committed in the sentencing phase of his trial and award the defendant a new sentencing hearing.

On 2 November 1986, the defendant shot and killed Guuadalupe Ramirez in the parking lot of the Brushy Mountain Service Station. The State's evidence at trial tended to show, *inter alia,*

that the defendant was at the service station, which also contained a bar and pool tables, on the afternoon of the shooting. Ramirez entered the service station and walked over to the defendant's table and spoke to him in Spanish. Several minutes later the two men went outside to Ramirez's car. Ramirez sat down in the driver's seat beside his friend, Alejandro Sanchez, who was already in the car. The defendant stood outside the car. Shortly thereafter, Harvey Herman, the station's owner, heard a shot fired. He looked outside and saw the defendant shoot Ramirez several times. Herman estimated that all of the shots were fired within three to four seconds. Herman told an employee to call the police, and then he spoke with the police dispatcher. By the time Herman reached the scene, a number of customers had gathered around the body. Herman told them to move away and not to touch anything.

When the rescue squad arrived, Ramirez was dead. The pathologist who performed the autopsy testified that the victim died of gunshot wounds to the head and chest. Ballistic reports indicated that the weapon seized from the defendant at the time of his arrest was the gun that fired the fatal shots. Investigating officers did not find any weapons at the scene.

The defendant testified in his own behalf. Since he neither spoke nor understood English, his testimony and the questions put to him were translated by a court-appointed interpreter. The defendant testified that Ramirez had repeatedly confronted and threatened him because the defendant's cousin was dating Ramirez's former girlfriend. The day of the shooting, Ramirez came into the service station and insisted that the defendant go outside and talk with him. The defendant testified that Ramirez sat down in his car, reached under the seat "real fast" and pulled out a revolver. Ramirez told the defendant he was going to shoot him. The defendant testified that he then pulled a pistol from his back pocket and shot Ramirez in self-defense.

The defendant introduced the testimony of two witnesses who corroborated his testimony about the moments before the shooting. He also introduced the testimony of numerous witnesses who testified that Ramirez had a violent and abusive character and had threatened the defendant on previous occasions.

Following the guilty verdict, the trial court held a sentencing hearing in which it found in mitigation that the defendant had no record of criminal convictions and that he was a person of good character with a good reputation in the community in which he lived. The trial court found in aggravation that the offense was especially heinous, atrocious, or cruel. The trial court concluded that the aggravating factor outweighed the mitigating factors and sentenced the defendant to life imprisonment.

[1] By his first assignment of error, the defendant contends that the trial court erred in denying his motion to have his court-appointed interpreter replaced. In the case at bar, the trial court appointed an interpreter, Delores Henriquez, to assist the defendant in the preparation of his case. Henriquez acted as interpreter in pre-trial preparations, but she notified the court that she would be unable to serve as interpreter for the trial. She was discharged, and the trial court appointed Manuel Prince to assist the defendant throughout the trial. Nancy Foster served as an interpreter for the State.

During the trial, the defendant moved to have Prince replaced because he thought Prince lacked the qualifications and expertise to serve as a trial interpreter. Following a *voir dire* hearing during which Prince and Henriquez testified, the trial court first noted that it had "inquired of both counsel for the State and counsel for Defendant at the outset of the trial as to whether or not they were satisfied with each other's interpreters and they indicated that they were." The trial court then found that: (1) Prince had been an interpreter in several criminal cases; (2) he had satisfactorily passed a course in connection with speaking and interpreting English; (3) he had conversed for several years in English; (4) Spanish is his native tongue; (5) he had taken some English courses at Wilkes Community College; and (6) he had been employed by several American employers where he was required to speak and understand English. The trial court concluded that Prince was adequately prepared to act as an interpreter and denied the defendant's motion.

A court has the inherent authority to appoint an interpreter when one is necessary. *Wise v. Short*, 181 N.C. 320, 322, 107 S.E. 134, 136 (1921); *State v. McLellan*, 56 N.C. App. 101, 102, 286 S.E. 2d 873, 874 (1982). The decision to appoint an interpreter rests

within the sound discretion of the trial court. Any person who is competent to perform the duty assumed may be appointed as an interpreter. *Wise v. Short*, 181 N.C. at 322, 107 S.E. at 136. The court's selection of an interpreter will be deemed error only upon a showing of abuse of discretion. *See State v. McLellan*, 56 N.C. App. at 102, 286 S.E. 2d at 875.

After reviewing the transcript, we conclude that the trial court was properly within its discretion in appointing and continuing to use Manuel Prince as the defendant's interpreter. Although there are some discrepancies between the trial court's findings of fact and the evidence presented at the *voir dire* hearing, the findings concerning the interpreter's competence are borne out by the record. Prince testified, *inter alia*, that he had taken five years of English during high school, that he had recently taken English courses at Wilkes Community College, that he had passed the GED examination given in English, that he had received a degree in electronics technology at Wilkes Community College, that he was presently employed at Sky City as hardware department manager, and that he had previously acted as a courtroom interpreter in North Carolina. This evidence, in addition to other *voir dire* testimony, supported the trial court's finding that Prince had a sufficient command of the English language to act as interpreter for the defendant. This assignment of error is, therefore, overruled.

[2] By his next assignment of error, the defendant contends that the trial court erred in excluding a statement made by the victim two weeks before his death. On surrebuttal, the defendant offered the testimony of Jose Cervin. Defense counsel asked Cervin "what, if anything, did Lupe [the victim] say to you about Leopoldo Torres?" The trial court sustained the State's objection to this question. The defendant then made an offer of proof for the record that Cervin would have testified that two weeks before his murder, the victim said he "wanted to buy a gun to kill 'Poldo' [the defendant]."

It is well established that a trial court's ruling on an evidentiary point will be presumed correct unless the complaining party can demonstrate that the particular ruling was in fact erroneous. *State v. Lloyd*, 321 N.C. 301, 309, 364 S.E. 2d 316, 322 (1988). Even if the complaining party can demonstrate that the trial court

erred in its ruling, relief will not be granted absent a showing of prejudice. *Id.* "A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached." N.C.G.S. § 15A-1443(a) (1983). In the case at bar even if it is assumed *arguendo* that the exclusion of the testimony was erroneous, we conclude that the defendant has not carried his burden of showing that he was prejudiced.

The defendant presented three witnesses who testified that the victim had threatened to harm the defendant. Also, the defendant testified that the victim had threatened him with a gun sometime before the shooting. Finally, numerous witnesses testified that the victim was known to carry a gun and that he had an assaultive and abusive character. This testimony tended to show that Ramirez had threatened the defendant prior to the shooting and that Ramirez was a person likely to carry out his threats with lethal force. Because this testimony was extensive and of similar import to the tendered testimony of Cervin, we conclude that the exclusion of Cervin's testimony was harmless to the defendant.

[3] By his next assignment of error, the defendant contends that the trial court erred during the sentencing phase in finding as an aggravating factor that the offense was especially heinous, atrocious, or cruel under N.C.G.S. § 15A-1340.4(a)(1)f (1983). We agree.

Second-degree murder is a Class C felony which carries a presumptive sentence of fifteen years imprisonment. N.C.G.S. § 14-17 (1977 Cum. Supp.); § 15A-1340.4(f)(1) (1983). The trial court may impose a sentence at variance with the presumptive sentence if aggravating or mitigating factors merit a longer or shorter sentence. *State v. Marley*, 321 N.C. 415, 364 S.E. 2d 133 (1988). Here, the trial court sentenced the defendant to life imprisonment after finding one aggravating and two mitigating factors and after determining that the aggravating factor outweighed the mitigating factors.

In determining whether the crime was especially heinous, atrocious, or cruel, "the focus should be on whether the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in*

*that offense." State v. Blackwelder,* 309 N.C. 410, 414, 306 S.E. 2d 783, 786 (1983), *quoted in State v. Mancuso,* 321 N.C. 464, 466, 364 S.E. 2d 359, 361 (1988).

The evidence in the case at bar tended to show, *inter alia,* that the defendant was inside the Brushy Mountain Service Station when Ramirez entered and insisted that the defendant walk outside with him. Ramirez and the defendant walked to Ramirez's car where the defendant fired multiple shots in rapid succession into Ramirez's head and chest. Witnesses testified that the shots were fired within a matter of a few seconds. An autopsy revealed that the victim died from any one of the gunshot wounds to the head and chest and that each of the wounds was sufficient to cause death. Ernest Sawyer, the first person to respond to the emergency call, testified that he arrived at the scene shortly after the shooting. He attempted to administer first aid, but Ramirez was already dead. Although there were three eyewitnesses to the shooting, there was no evidence tending to indicate that Ramirez did not die instantly upon being shot. There was no evidence that the victim suffered psychologically or physically in a manner not normally present in other *second-degree* murders.

Neither is there evidence that the murder was excessively brutal or dehumanizing when compared to other *second-degree* murders. The evidence tended to show that the defendant emptied his pistol by firing shots at close range in rapid succession into Ramirez's head and chest killing him instantly. Testimony of numerous witnesses tended to show that Ramirez usually carried a pistol, was a violent man apt to use it, had threatened the defendant, and initiated the contact with the defendant which led to this killing. On the peculiar facts of this case, at least, the single fact that the defendant inflicted multiple wounds did not make the second-degree murder especially heinous, atrocious, or cruel under N.C.G.S. § 15A-1340.4(a)(1)f. We conclude that the evidence did not support a finding that the murder here was especially heinous, atrocious, or cruel when compared, as it must be, to other *second-degree* murders.

We hold the guilt-innocence phase of the defendant's trial was free of reversible error. Because the trial court erroneously found as an aggravating factor that the offense was especially hei-

nous, atrocious, or cruel, the case is remanded to the Superior Court, Wilkes County, for resentencing.

Remanded for resentencing.