STATE OF NORTH CAROLINA v. JOHNNY MICHAEL SMALL

No. 265A89

(Filed 7 February 1991)

**1. Robbery § 4.3 (NCI3d); Homicide § 21.6 (NCI3d)— armed robbery—felony murder—evidence sufficient**

There was substantial evidence of armed robbery and felony murder where the State's evidence established that defendant was at Delgado Square, the location of the pet store which was robbed, sometime between 5:40 p.m. and 6:00 p.m. on the date the offenses were committed; defendant left an accomplice waiting in a car for five minutes and returned wearing a different shirt from the one worn when he entered the store; a witness saw defendant leaving the pet store; defendant gave the accomplice $10.00 a few minutes later, told him that he had gotten the money from the pet store, stated that he had to "shoot her," and threatened to shoot the accomplice if he told anyone; the cash register's read-out slip permits an inference that the register drawer contained money moments before the victim was killed; the victim's brother testified that she normally kept at least $80.00 in the register drawer; the drawer contained only coins when the body was discovered; the accomplice testified that defendant possessed a .25 caliber weapon immediately after the incident; and the weapon used in the murder was a .25 caliber.

**Am Jur 2d, Homicide § 435; Robbery § 64.**

**2. Homicide § 21.5 (NCI3d)— premeditation and deliberation— evidence sufficient**

There was sufficient evidence of first degree murder based on premeditation and deliberation where the State's evidence tended to show that the victim, who operated a pet store, was shot while lying face down on the floor; the killer placed the gun directly against the victim's skull before pulling the trigger; there was no evidence of provocation by the victim; the store was orderly; the victim was a former bank employee who had been trained to submit without resistance to an armed robber's demands; and the victim was helpless while lying face down on the floor with her hands above her head.

**Am Jur 2d, Homicide § 439.**

3. **Criminal Law § 464 (NCI4th)— closing argument—prosecutor's misstatement of evidence—not prejudicial**

There was no prejudice in a prosecution for first degree murder and armed robbery from the erroneous overruling of defendant's objection to an incorrect statement in the prosecutor's closing argument where the prosecutor immediately apologized and clarified the misstatement.

**Am Jur 2d, Trial §§ 280, 296-299.**

4. **Criminal Law § 451 (NCI4th)— prosecutor's closing argument— comment on defendant's age and prospects for prison release— no error**

There was no prejudicial error in a noncapital prosecution for first degree murder and armed robbery from the prosecutor's closing argument that defendant was young and wouldn't stay in prison forever no matter what the jury did. The trial court immediately cured the impropriety by instructing the jury to disregard that portion of the prosecutor's argument.

**Am Jur 2d, Trial §§ 280, 296-299.**

5. **Criminal Law § 445 (NCI4th)— prosecutor's closing argument— personal opinion—fear of defendant**

There was insufficient prejudice to require a new trial for first degree murder and armed robbery where the prosecutor argued to the jury that this was one of the most heinous murders with which he had had contact and that defendant frightened him where the evidence supported the characterization of the murder as heinous and the statement that defendant frightened the prosecutor was not, standing alone, so prejudicial as to make a fair trial impossible. The trial court removed any possible prejudice by admonishing the jurors to disregard any personal opinions any attorney may have expressed during closing argument.

**Am Jur 2d, Trial §§ 280, 296-299.**

6. **Criminal Law § 460 (NCI4th)— prosecutor's closing argument— inference of consciousness of guilt—no error**

There was no merit in a prosecution for murder and armed robbery to defendant's contention that the prosecutor in closing arguments unreasonably inferred consciousness of guilt from the fact that defendant was found in the woods approx-

imately fifty feet from the fairground ride at which an accomplice was arrested.

**Am Jur 2d, Trial § 261.**

7. **Infants § 17 (NCI3d) — murder and armed robbery — tried as adult — inculpatory statement — failure to make required findings**

There was no prejudicial error in a prosecution of a juvenile as an adult for first degree murder and armed robbery from the failure to make the findings required by N.C.G.S. § 7A-595(d) to establish that defendant knowingly, willingly and understandingly waived his rights when making his post-arrest statement. The statement gave somewhat differing versions of defendant's whereabouts and activities, was not inculpatory, and, in light of the State's compelling evidence incriminating defendant, there was no reasonable possibility that a different result would have been reached at trial whether defendant's statement was admitted or excluded.

**Am Jur 2d, Evidence §§ 611-614.**

8. **Criminal Law § 76 (NCI4th) — murder and armed robbery — pretrial publicity — change of venue denied — no error**

There was no prejudicial error in a prosecution for murder and armed robbery in the denial of defendant's motion for a change of venue due to pretrial publicity, even though the trial court misstated the applicable standard in making its ruling, where defendant failed to carry his burden of showing that he exhausted his peremptory challenges or that jurors sat who were objectionable or who had prior knowledge of the case.

**Am Jur 2d, Criminal Law §§ 374, 378.**

**Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.**

9. **Criminal Law § 1148 (NCI4th) — armed robbery — contemporaneous murder — aggravating factor — especially heinous, atrocious or cruel**

The trial judge erred when sentencing defendant for armed robbery by finding in aggravation that the offense was especially heinous, atrocious or cruel where the State presented no evidence, apart from the murder for which defendant was contemporaneously convicted, to show that defendant's actions

in the robbery were more excessively brutal than those of other armed robbers or that the victim endured more psychological or physical pain or dehumanizing aspects than other armed robbery victims. N.C.G.S. § 15A-1340.4(a)(1)f.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide § 554.**

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing the sentence of life imprisonment upon a jury verdict finding defendant guilty of murder in the first degree, entered by *Grant, Sr., J.*, at the 3 April 1989 Criminal Session of Superior Court, NEW HANOVER County. On 5 January 1990 we allowed defendant's motion to bypass the Court of Appeals as to a judgment of imprisonment for twenty years entered upon his conviction of robbery with a dangerous weapon. Heard in the Supreme Court 14 November 1990.

　*Lacy H. Thornburg, Attorney General, by David Roy Blackwell, Special Deputy Attorney General, for the State.*

　*Malcolm Ray Hunter, Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant appellant.*

WHICHARD, Justice.

Pursuant to a juvenile order entered 8 November 1988, defendant's case was transferred to Superior Court, New Hanover County, where he was tried as an adult on true bills of indictment charging him with murder in the first degree and armed robbery. Defendant pled not guilty, and the murder case was tried noncapitally because he was under the age of sixteen at the time of the crimes. *See Thompson v. Oklahoma*, 487 U.S. 815, 101 L. Ed. 2d 702 (1988). The jury found him guilty of first degree murder by premeditation and deliberation and under the felony murder rule, and of robbery with a firearm. We find no prejudicial error in the guilt phase of defendant's trial, but we remand for a new sentencing hearing on the armed robbery charge.

On 13 July 1988, at approximately 6:00 p.m., Joe Bryant found Pamela Dreher's body lying face down on the floor of the tropical fish store she operated at Delgado Square in Wilmington. Dreher had been shot in the head. The cash register drawer was open, and the money clips were up; there were no bills in the register. The time each cash register receipt was generated appeared on

the receipt. Dreher's last customer receipt showed 5:29 p.m. as the time the register printed it. Dreher's brother testified that the register's timing mechanism was a few minutes slow. Evidence introduced at trial included this and three other sales slips, one showing the day's receipts of $93.83 at 5:39 p.m. and two "no sales" slips at 5:46 p.m. and 5:49 p.m.

The investigating officers found only one fingerprint in the store, and it did not match defendant's. Joe Bryant, who operated the store next door, testified that he did not hear a shot that afternoon. He testified that he noticed some unusual lights in Dreher's store, and that when he looked in he saw her lying in a pool of blood.

On 29 October 1988, the police arrested David Wayne Bollinger while he and defendant were working together at the New Hanover County Fair. After the police interrogated Bollinger, they returned to arrest defendant. They found defendant in the woods approximately fifty feet from where he and Bollinger had been standing approximately an hour earlier.

The State's evidence tended to show that when witness Nina Raeford walked past the victim's store on her way home from work between 5:40 p.m. and 6:00 p.m. on 13 July, she saw defendant leave the store and get in a brown car driven by Bollinger. Bollinger, who was charged with being an accessory after the fact, testified that he and defendant were driving around on the afternoon of the murder. At defendant's request, he stopped at Delgado Square. As the car turned into the parking area, defendant turned the car radio to its maximum volume. Defendant told Bollinger he needed to make a phone call. Bollinger parked facing the street and sat in the car listening to the radio. When defendant returned a few minutes later, he was wearing a different shirt, and he told Bollinger to drive to defendant's mother's house. There, defendant gave Bollinger $10.00, telling him he got the money from the pet store. Bollinger asked if defendant had robbed the store, and defendant replied, "sort of." Defendant then pulled out a gun, stated that he "had to shoot [the pet store operator]," and threatened to shoot Bollinger if Bollinger told anyone about the incident.

The State's evidence also included testimony of Raymond Eugene Brigman, Jr., to the effect that his .25 caliber automatic pistol disappeared from the glove compartment of Bollinger's car in May 1988 after defendant borrowed the automobile. Dreher was shot with a .25 caliber weapon, but the weapon was never recovered.

Dr. Charles Garrett, a pathologist, testified that Dreher's wound was a "hard contact" wound and whoever inflicted it would have been "spattered" with blood.

Defendant's evidence tended to show that Nina Raeford did not "punch out" at her job at McDonald's until 5:55 p.m. on the day of the murder and that the restaurant is a forty-five minute walk from Delgado Square. Raeford did not contact law enforcement authorities until August, after Crimestoppers had offered a $5,000 reward for information leading to an indictment in the case. Also, Woodrow Ward, Bollinger's employer, testified that he and Bollinger left Wilmington between 5:30 and 6:00 (a.m. or p.m. not specified) on 13 July to attend an auto auction in Conway, South Carolina. Defendant's evidence also tended to show that Bollinger had a .25 caliber automatic weapon in the glove compartment of his car "at one time."

Defendant first assigns as error the trial court's denial of his motion to dismiss at the close of all the evidence. He contends that his conviction for first degree murder must be vacated because there is insufficient evidence both that: (1) he was the perpetrator, and (2) the killing was premeditated and deliberated. Defendant also contends that his conviction for armed robbery must be vacated because there is insufficient evidence both that he (1) was the perpetrator, and (2) took and carried away property.

"On a motion to dismiss on the ground of insufficiency of the evidence, the question for the court is whether there is substantial evidence of each element of the crime charged and of the defendant's perpetration of such crime." *State v. Bates*, 309 N.C. 528, 533, 308 S.E.2d 258, 262 (1983).

> [T]he trial court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it. . . . If there is substantial evidence—whether direct, circumstantial, or both— to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 382-83 (1988) (citations omitted). Further, "[t]he defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Jones*, 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971). The determina-

tion of the witnesses' credibility is for the jury. *See Locklear*, 322 N.C. at 358, 368 S.E.2d at 383. "[C]ontradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982).

Armed robbery under N.C.G.S. § 14-87 consists of the following elements:

> (1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened. 'Force or intimidation occasioned by the use or threatened use of firearms, is the main element of the offense.'

*State v. Beaty*, 306 N.C. 491, 496, 293 S.E.2d 760, 764 (1982) (in part quoting *State v. Mull*, 224 N.C. 574, 576, 315 S.E.2d 764, 765 (1944)); *see also State v. Williams*, 319 N.C. 73, 79, 352 S.E.2d 428, 433 (1987).

By statute in North Carolina, first degree murder includes "[a] murder . . . perpetrated by . . . willful, deliberate, and premeditated killing, or . . . committed in the perpetration or attempted perpetration of any . . . robbery . . . or other felony committed or attempted with the use of a deadly weapon. . . ." N.C.G.S. § 14-17 (1986). In defining premeditation and deliberation, this Court has stated:

> Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation. . . . Deliberation means an intent to kill carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. . . .
>
> Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. . . . Instead, they usually must be proved by circumstantial evidence. Among other circumstances to be considered in determining whether a killing was with premeditation and deliberation are: (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defend-

ant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

*State v. Brown*, 315 N.C. 40, 58-59, 337 S.E.2d 808, 822-23 (1985) (citations omitted), *cert. denied*, 476 U.S. 1165, 90 L. Ed. 2d 733 (1986), *overruled on other grounds, State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988).

[1] Defendant contends that because Raeford's and Bollinger's testimony is all that places him in the pet store at or about the time of the offenses, and because that evidence is contradicted by the respective witnesses' employers, the evidence is insufficient to support the conviction. Raeford's and Bollinger's testimony, if believed, however, establishes that (1) defendant was at Delgado Square sometime between 5:40 p.m. and 6:00 p.m. on the date the offenses were committed, (2) defendant left Bollinger waiting in the car for five minutes, (3) defendant returned to Bollinger's car wearing a different shirt from the one worn when he entered the store, (4) Raeford saw defendant leaving the pet store, and (5) a few minutes later defendant gave Bollinger $10.00, told him he had gotten the money from the pet store, stated that he had to "shoot her," and threatened to shoot Bollinger if he told anyone about the incident. The cash register's "read-out" slip showing the day's sales of over $93.00 permits an inference that the register drawer contained money moments before Dreher was killed. Further, Dreher's brother testified that his sister normally kept at least $80.00 in the register drawer. The drawer contained only coins when Dreher's body was discovered. The evidence that money had been in the drawer, that the money clips were up and there were no paper bills, and that defendant gave Bollinger $10.00, stating that he "got it from the pet store," permits a finding that defendant took and carried away property belonging to the victim. Bollinger testified that defendant possessed a .25 caliber weapon immediately after the incident, and the weapon used in the murder was .25 caliber. This evidence, viewed in the light most favorable to the State, *Locklear*, 322 N.C. at 358, 368 S.E.2d at 382-83, permits a finding that defendant used a firearm in the robbery.

STATE v. SMALL

[328 N.C. 175 (1991)]

The foregoing evidence, viewed—as required—in the light most favorable to the State, constituted substantial evidence that defendant committed the offense of armed robbery. It also sufficed to support defendant's first degree murder conviction under the felony murder rule. *See* N.C.G.S. § 14-17 (1986).

[2] Further, there is sufficient evidence of murder in the first degree on the basis of premeditation and deliberation. The State's evidence tended to show that Dreher was shot while she was lying face down on the floor. The wound was a "hard contact" wound; the killer placed the gun directly against the victim's skull before pulling the trigger. There was no evidence of provocation by the victim. The store was orderly, and the victim was a former bank employee who had been trained to submit without resistance to an armed robber's demands. Lying face down on the floor with her hands above her head, the victim was helpless. The evidence presented, viewed in the light most favorable to the State, *Locklear*, 322 N.C. at 358, 368 S.E.2d at 382-83, supports the inference that the victim did not provoke defendant and that defendant killed the victim after she "ha[d] been felled and rendered helpless." *See Brown*, 315 N.C. at 59, 337 S.E.2d at 823. Defendant's first assignment of error is thus overruled.

Defendant next assigns as error the admission of portions of the prosecutor's closing arguments to the jury. He contends that the argument contains four errors, any one of which entitles him to a new trial: (1) the prosecutor's incorrect argument that Bollinger had confessed to armed robbery and murder, (2) the prosecutor's statements about how long defendant would be in prison, which constituted an impermissible comment on parole, (3) the prosecutor's argument injecting his personal opinion into the case, and (4) the prosecutor's reference to defendant's "flight" just prior to arrest, which was not supported by the evidence.

The relevant portions of the closing argument are:

[Prosecutor]: "Do you believe that David Bollinger has in effect confessed to participating in an armed robbery and a first degree murder while in the company of [defendant] just for the heck of it? . . . . Would you confess to a first degree murder and an armed robbery if you had an airtight alibi and you weren't involved? Of course not.

[Defense counsel]: Objection, Your Honor. It's not confessed to first degree murder or armed robbery. He's entered a plea of not guilty.

The Court: Overruled.

[Prosecutor]: I apologize. Would you give a statement that in effect would amount to a confession to participating in an armed robbery and a first degree murder? Not just a first degree murder, but a first degree murder of one of the most heinous kind I have ever come in contact with."

. . . .

[Prosecutor]: "[The police] went back and where did they find Johnny Small? They found him in the woods crouched down behind some shrub bushes. An innocent person? Would an innocent person do that? Use your common sense. Use your intelligence and your common sense. Is that the reaction of an honest, innocent person?"

. . . .

[Prosecutor]: "What I have heard about 15-, 16-, 17- and 18- and 19-year-olds and what they participated in, in this particular matter saddens me. The thing that really frightens me is Johnny Small, because as I told you in the beginning, this is a first degree murder case and an armed robbery case, but it's not a capital case, because of his age, no matter what you do, Johnny Small won't stay in prison forever.

Defendant objected to the prosecutor's characterization of Bollinger's actual "not guilty" plea as a "confession" and to the prosecutor's reference to the possible duration of defendant's sentence if he was convicted. The trial court overruled the first objection. In response to the second objection, it instructed the jury to disregard the portion of the argument relating to defendant's not staying in prison because of his age. Defendant did not object to the prosecutor's innuendo that defendant fled because he was guilty or to the prosecutor's expression of his opinion that the murder was among the most heinous with which he had had contact.

"Prosecutors are granted wide latitude in the scope of their argument." State v. Zuniga, 320 N.C. 233, 253, 357 S.E.2d 898, 911, cert. denied, 484 U.S. 959, 98 L. Ed. 2d 384 (1987). "An attorney

may, . . . on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue." N.C.G.S. § 15A-1230(a) (1988). "A prosecutor's argument is not improper when it is consistent with the record and does not travel into the fields of conjecture or personal opinion." *State v. Zuniga*, 320 N.C. at 253, 357 S.E.2d at 911. "Where, immediately upon a defendant's objection to an improper remark made by the prosecutor in his closing argument, the trial court instructs the jury to disregard the offending statement, the impropriety is cured." *State v. Woods*, 307 N.C. 213, 222, 297 S.E.2d 574, 579 (1982).

Further,

[t]he conduct of the arguments of counsel is left to the sound discretion of the trial judge. In order for defendant to be granted a new trial, the error must be sufficiently grave that it is prejudicial. Ordinarily, an objection to the arguments by counsel must be made before verdict, since only when the impropriety is gross is the trial court required to correct the abuse *ex mero motu*.

*State v. Britt*, 291 N.C. 528, 537, 231 S.E.2d 644, 651 (1977). Unless the defendant objects, the trial court is not required to interfere *ex mero motu* unless the arguments " 'stray so far from the bounds of propriety as to impede the defendant's right to a fair trial.' " *State v. Harris*, 308 N.C. 159, 169, 301 S.E.2d 91, 98 (1983) (quoting *State v. Davis*, 305 N.C. 400, 421, 290 S.E.2d 574, 587 (1982)).

We first consider those portions of the argument to which defendant objected. The standard of review is whether defendant was prejudiced. *See State v. Britt*, 291 N.C. at 537, 231 S.E.2d at 651.

[3] The prosecutor stated incorrectly that Bollinger had "confessed" to participating in an armed robbery and a first degree murder, and defendant's objection was improperly overruled. However, this erroneous ruling was not prejudicial. The prosecutor immediately apologized and clarified the misstatement, and defendant has not shown that he was prejudiced.

[4] Defendant also objected to the prosecutor's statement that "because of his age, no matter what you do, Johnny Small won't stay in prison forever." Because the trial court immediately instructed the jury to disregard that portion of the prosecutor's argument, the impropriety was cured. *State v. Woods*, 307 N.C.

at 222, 297 S.E.2d at 579. The prosecutor's statements here were very similar to those in *Woods*. There, the prosecutor argued:

> I think you should also know that you should convict that woman of first degree murder and conspiracy and should she be sentenced to a sentence of life imprisonment, she won't spend the rest of her life in a _____ .... You know, when is the last time anybody went to the gas chamber in this state? Twenty years. People in this state don't believe you go to the gas chamber on murder and maybe you don't.

*Woods*, 307 N.C. at 222, 297 S.E.2d at 580. The Court held that the improprieties were cured because the trial court sustained defense counsel's objections and instructed the jury to disregard the statements. Here, just as in *Woods*, the trial court sustained the objection, and the instruction corrected any improprieties.

[5]  Next, we consider the two statements to which defendant did not object at trial. The prosecutor stated that this murder was "a first degree murder of one of the most heinous kind I have ever come into contact with" and that defendant frightened him. These infusions of the prosecutor's personal opinion were improper, but they were not so grossly improper as to require a new trial. The evidence supported the characterization of the murder as heinous. The statement that defendant frightened the prosecutor was not, standing alone, so prejudicial as to make a fair trial impossible. *See State v. Harris*, 308 N.C. at 169, 301 S.E.2d at 98. Lastly, in instructing the jury, the trial court remedied any possible prejudice from these statements by admonishing the jurors to disregard any personal opinions any attorney may have expressed during closing argument.

[6]  The prosecutor also referred to the fact that, when arrested, defendant was found in the woods fifty yards from the fairground ride by which he and Bollinger were standing when the police arrested Bollinger about ninety minutes earlier. Defendant contends the prosecutor's argument that this action demonstrated a consciousness of guilt is not a reasonable inference from the record. We disagree and find this assignment to be without merit. *See* N.C.G.S. § 15A-1230(a) (1988).

[7]  Defendant next contends he is entitled to a new trial because the trial court admitted his post-arrest statement to police officers without first making findings of fact to establish that he knowingly,

willingly, and understandingly waived his rights, as required by N.C.G.S. § 7A-595(d) (1989). The statute provides in pertinent part that:

(a) Any juvenile in custody must be advised prior to questioning:

(1) That he has a right to remain silent; and

(2) That any statement he does make can be and may be used against him; and

(3) That he has a right to have a parent, guardian or custodian present during questioning; and

(4) That he has a right to consult with an attorney and that one will be appointed for him if he is not represented and wants representation.

. . . .

(d) Before admitting any statement resulting from custodial interrogation into evidence, the judge must find that the juvenile knowingly, willingly, and understandingly waived his rights.

N.C.G.S. § 7A-595(a), (d) (1989).

It is true that the record does not contain the finding this statute requires. The purpose of the requirement, however, is to establish the basis for admitting the statement. The statement merely gave somewhat differing versions of defendant's whereabouts and activities on the day in question; it was not inculpatory. In light of the State's compelling evidence incriminating defendant, there is no "reasonable possibility that . . . a different result would have been reached at trial" whether defendant's statement was admitted or excluded. N.C.G.S. § 15A-1443(a) (1988). The failure to make the finding thus did not affect the outcome of defendant's trial, and defendant has failed to carry his burden of showing prejudice from the trial court's failure to make the finding. *Id.*

[8] Defendant also argues that the trial court improperly denied his motion for a change of venue due to prejudicial pre-trial publicity. News coverage of the crimes included twelve to fifteen stories on television stations over a six-month period, radio reports, and six newspaper articles. A local newspaper printed a photograph of defendant in handcuffs. Some of the articles mentioned defendant's suicide attempt after his arrest, his previous larceny conviction, and a pending unrelated larceny charge. Only two of the

six articles mentioned defendant's name. Except for the article regarding defendant's suicide attempt, the articles merely reported the facts of the case.

Whether to grant a motion for a change of venue is in the trial court's discretion, and the "decision will not be disturbed on appeal unless the defendant can show an abuse of discretion." *State v. Dobbins*, 306 N.C. 342, 344, 293 S.E.2d 162, 164 (1982). "The test . . . is whether, due to pretrial publicity, there is a reasonable likelihood that the defendant will not receive a fair trial." *State v. Jerrett*, 309 N.C. 239, 254, 307 S.E.2d 339, 347 (1983).

The burden of proving that pretrial publicity precludes a fair and impartial trial rests with defendant. *State v. Dobbins*, 306 N.C. at 344, 293 S.E.2d at 163.

> [W]hen a defendant alleges prejudice on the basis of pretrial publicity and does not show that he exhausted his p[er]emptory challenges, or that there were jurors who were objectional or had prior knowledge of the case, defendant has failed to carry his burden of establishing the prejudicial effect of the pretrial publicity.

*Id.* at 345, 293 S.E.2d at 164. Further, if the defendant shows only that publicity consists of factual, noninflammatory news stories, denial of a motion for change of venue is proper. *State v. Vereen*, 312 N.C. 499, 511-12, 324 S.E.2d 250, 259, *cert. denied*, 471 U.S. 1094, 85 L. Ed. 2d 526 (1985).

Here, defendant has not carried his burden of showing that he exhausted his peremptory challenges or that jurors sat who were objectionable or had prior knowledge of the case. *Cf. State v. Moore*, 319 N.C. 645, 356 S.E.2d 336 (1987). Although the trial court misstated the applicable standard in making its ruling, defendant here has failed to establish the prejudicial effect of the pretrial publicity. *State v. Dobbins*, 306 N.C. at 345, 293 S.E.2d at 164. This assignment of error is therefore overruled.

[9] Defendant finally contends the trial court erred in finding as an aggravating factor on the armed robbery charge that the robbery was especially heinous, atrocious, or cruel. We agree.

> The Fair Sentencing Act and our cases interpreting it establish several rules which determine what evidence a sentencing judge may properly consider in aggravating a crime

covered by the Act. First, a conviction may not be aggravated by prior convictions of other crimes which could have been joined for trial or by a contemporaneous conviction of a crime actually joined [or by] acts which form the gravamen of these convictions. . . . Second, evidence used to prove an element of a crime may not also be used to prove a factor in aggravation of that *same* crime. . . . Third, 'the same item of evidence may not be used to prove more than one factor in aggravation.' . . . Fourth, acts which could have been, but were not, the basis for other joinable criminal convictions may be used to aggravate the conviction for which defendant is being sentenced. . . . Finally, *evidence* used in proving an element of one crime may also be used to support an aggravating factor of a separate, though joined, crime for which defendant is being sentenced.

*State v. Hayes*, 323 N.C. 306, 312, 372 S.E.2d 704, 707-08 (1988) (in part quoting N.C.G.S. § 15A-1340.4(a)(1)p (1983) ) (citations omitted). "In the context of the Fair Sentencing Act, one of the primary purposes of sentencing is to impose a punishment commensurate with the injury caused by the crime." *State v. Cofield*, 324 N.C. 452, 463, 379 S.E.2d 834, 841 (1989). Aggravating factors must be "proved by a preponderance of the evidence." N.C.G.S. § 15A-1340.4(a) (1988). In determining whether a crime was especially heinous, atrocious, or cruel under the Fair Sentencing Act, "the focus should be on whether the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense.*" *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E.2d 783, 786 (1983) (emphasis in original). This Court has emphasized that comparisons must be drawn between offenses of the same type. *See State v. Torres*, 322 N.C. 440, 446, 368 S.E.2d 609, 612 (1988). "The test . . . is whether the State proved by a preponderance of the evidence that the victim's mental and emotional injury in this case was in excess of the injury normally present in the offense." *State v. Cofield,* 324 N.C. at 464, 379 S.E.2d at 841.

Under *Hayes*, it is clear that evidence presented to support the conviction of first-degree murder by premeditation and deliberation could also support an aggravating factor in the armed robbery conviction. However, the premeditated and deliberate murder that occurred during the armed robbery may not be used as an aggravating factor in the armed robbery sentencing here because

the murder was a joined offense. *See State v. Hayes*, 323 N.C. at 312, 372 S.E.2d at 707-08; *see also State v. Westmoreland*, 314 N.C. 442, 449, 334 S.E.2d 223, 228 (1985) ("a conviction of an offense covered by the Fair Sentencing Act may not be aggravated by contemporaneous convictions of offenses joined with such offense"). Here, apart from the murder for which defendant was contemporaneously convicted, and which thus cannot be considered in aggravation of the armed robbery charge, there was no evidence of excessive brutality, physical pain, psychological suffering, or dehumanizing aspects not present in every armed robbery. While any armed robbery is frightening to the victim and repugnant to lawful society, the aggravating factor set forth in N.C.G.S. § 15A-1340.4(a)(1)(f) expressly applies only to *especially* heinous, atrocious, or cruel offenses. The State presented no evidence to show that defendant's actions in the robbery were more excessively brutal than those of other armed robbers or that the victim endured more psychological or physical pain or dehumanizing aspects than other armed robbery victims. *Cf. State v. Bush*, 78 N.C. App. 686, 694, 338 S.E.2d 590, 594-95 (1986) (victim suffered more psychologically than the average armed robbery victim where the perpetrator was her son).

Thus, the State has failed to meet its burden of proving by the preponderance of the evidence that the armed robbery was especially heinous, atrocious, or cruel. Accordingly, defendant must be resentenced on the armed robbery charge.

First degree murder: no error.

Robbery with a dangerous weapon: guilt phase, no error; remanded for resentencing.