STATE v. MASON

[125 N.C. App. 216 (1997)]

STATE OF NORTH CAROLINA v. FERNANDO LLAMAS MASON

No. COA95-831

(Filed 4 February 1997)

1. **Constitutional Law § 228 (NCI4th); Criminal Law § 1698 (NCI4th Rev.)— aggravating factor—insufficient evidence at sentencing hearing—finding at resentencing hearing— not double jeopardy**

   The trial court's finding of the especially heinous, atrocious, or cruel aggravating factor at a resentencing of defendant for second-degree murder pursuant to the Fair Sentencing Act after the Court of Appeals had ruled that the evidence at the original sentencing hearing was insufficient to support this aggravating factor did not violate defendant's double jeopardy rights under the federal or state constitutions. U.S. Const. amends. V and XIV; N.C. Const. art. I, § 19.

   **Am Jur 2d, Criminal Law §§ 581-583, 598; Homicide § 554.**

2. **Appeal and Error § 561 (NCI4th); Criminal Law § 1698 (NCI4th Rev.)— aggravating factor—insufficient evidence at sentencing hearing—not law of case at resentencing hearing**

   A ruling by the Court of Appeals that the evidence in the original sentencing hearing for a second-degree murder was insufficient to support a finding that the offense was especially heinous, atrocious, or cruel did not become the law of the case and preclude the trial court from finding this aggravating factor in a subsequent resentencing hearing where additional evidence was presented at the resentencing hearing which provided the trial court with new and important substantive details relating to the commission of the crime and the victim's suffering.

   **Am Jur 2d, Homicide § 554.**

3. **Criminal Law § 1178 (NCI4th Rev.)— second-degree murder—especially heinous, atrocious, or cruel aggravating factor—sufficiency of evidence**

   The evidence presented in a resentencing hearing for second-degree murder was sufficient to support the trial court's finding of the especially heinous, atrocious, or cruel aggravating factor

**STATE v. MASON**

[125 N.C. App. 216 (1997)]

where it showed that after the victim was kidnapped, driven around for several hours, taunted, hit in the face and head with a gun, and raped twice, she was dragged out of her car by her hair; she suffered severe beatings by all three codefendants, as evidenced by the multiple scrapes and bruises on her body; she was knocked down, kicked in the face, and dragged through the mud; she was told just before she was shot twice that she was being killed "because of the Rodney King thing"; and expert testimony established that she was conscious for at least three to seven minutes after she was shot as she was left lying alone in the street to contemplate her impending death.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide § 554; Trial §§ 572, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

Appeal by defendant from judgment entered 8 March 1995 by Judge John M. Gardner in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 November 1996.

Defendant was indicted on 1 June 1992 for murder and first degree kidnapping. On 19 August 1992 he entered a plea of guilty to second degree murder and first degree kidnapping, and he agreed to testify truthfully against his co-defendants if called upon to do so. The State prayed for judgment to be continued to a date certain. At the 6 October 1992 sentencing hearing, the trial court consolidated the offenses and sentenced defendant to life imprisonment, in excess of the presumptive sentence under the Fair Sentencing Act in effect at that time.

At that sentencing hearing, the State summarized the evidence as follows: On 11 May 1992 the victim, Tracy Lynne Brockway, drove her car to a high crime area in Charlotte to purchase drugs. She stopped her car at a corner where defendant was standing with Alphonso Benson and Shelton Crockett, his co-defendants. The victim asked to purchase a twenty-dollar slab of cocaine from defendant, but defendant had no drugs to sell. Defendant told the victim to pull her car over, and he then got into the car with her. Benson approached the car with a .38 caliber revolver and told the victim to move to the back seat of her car. Defendant climbed into the driver's seat, Benson sat

in the front passenger seat, and Crockett sat in the back seat with the victim.

Defendant drove the car around Charlotte, stopping for gas and stopping again at another location where defendant and Benson left the car briefly. When Benson returned to the car he ordered the victim at gunpoint to have non-consensual sex with Crockett. Benson then struck the victim's head with a gun for not making appropriate noises, and she then began making the requested noises.

Defendant then got back in the driver's seat, and Benson directed him to drive to a dark, isolated road behind an apartment complex. Benson dragged the victim from the car, and he, defendant, and Crockett struck the victim about the head and face. Crockett then turned and walked to the car. Defendant told Benson, "let's go." Benson stated that he was going to kill the victim "because of the Rodney King thing," and he shot her twice in the side. Defendant, Benson, and Crockett then drove to a Waffle House and had breakfast. According to Crockett, defendant took twenty dollars from the victim's purse, which had been left on the front car seat.

The State presented only a conclusory summary of the evidence related to the victim's death, based upon a statement that Crockett gave to the police. The prosecutor argued to the trial court at the first sentencing hearing that "this [was] one of the more horrendous crimes that [he had] ever seen." The prosecutor also argued that the evidence reflected premeditation and deliberation. Defendant's counsel urged the trial court to find several statutory and non-statutory mitigating factors.

In originally sentencing defendant, Judge Marcus Johnson consolidated for judgment the offenses of first degree kidnapping and second degree murder. Judge Johnson found as a statutory aggravating factor that "[t]he offense was especially heinous, atrocious or cruel," and found as a non-statutory aggravating factor that the "conduct was extremely gratutious [sic] and sadistic infliction of pain on [the] victim." He also found several mitigating factors, but concluded that the aggravating factors outweighed the mitigating factors. Defendant was sentenced to life in prison.

Defendant appealed to this Court, arguing that the trial court erred in using the same evidence to support the two different factors in aggravation; in finding the statutory aggravating factor that the offense was especially heinous, atrocious or cruel, because it was not

supported by the evidence; and in failing to find as a mitigating factor that defendant played a minor role in the commission of the crime.

This Court reversed and remanded for resentencing based on defendant's first two arguments and thus declined to consider the third. With regard to defendant's second argument, this Court examined the evidence of record to determine "whether the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense*." *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E.2d 783, 786 (1983). The only evidence presented by the State was the prosecutor's summary of the evidence, based upon a statement Crockett gave to police investigators. This Court held in defendant's first appeal, based on earlier precedents, that the evidence of record was not enough to support a finding that the crime was *especially* heinous, atrocious or cruel.

At the resentencing hearing, the State introduced into evidence the statements given to the police by defendant and Crockett, as well as several photographs of the victim's body and the crime scene. In addition, the State called as witnesses Charlotte Police Investigator Theodore Kennedy, Charlotte Police Crime Scene Search Technician George C. Chapman, and Medical Examiner Dr. James Michael Sullivan. Defendant testified on his own behalf.

Kennedy, who was a homicide investigator, testified that when he arrived on the crime scene on the morning of the murder, he saw the victim lying in the middle of the road. After examining the body, he believed that "the victim was killed by gunshots and from being badly beaten." He described the scene as a construction site where people dump a lot of debris; there were no lights on the road; there were no cars parked in the area; and the closest apartments were about a city block away.

The court then heard testimony from Chapman, who described the crime scene as "an undeveloped, unlived, roadway area," where he took photographs of the scene and the victim. Nine photographs were admitted into evidence without objection, and Chapman testified that they accurately depict the victim's body and the crime scene. The photographs of the victim show multiple scrapes, bruises, and blood on her face and body, and two gunshot wounds on her chest and abdomen. One of the photographs depicts, as Chapman testified, "a muddy area with standing water that is along the curb edge of the roadway having what appeared to be drag marks through that."

Dr. Sullivan, a forensic pathologist and medical examiner, testified as an expert in forensic pathology. Seven photographs that he took were admitted into evidence. Dr. Sullivan testified that the photographs accurately depict the condition of the victim's body prior to autopsy. Several photographs illustrate blunt trauma injuries, including bruises and scrapes, to the left chest area as well as the eye, cheek, temple, and chin areas of the face. Other photographs depict bruises and scrapes on the victim's right elbow, left shoulder, and right forearm areas. The last photograph shows the entrance wounds of the two gunshots in the victim's right chest and abdomen.

Upon an internal examination of the victim's body, Dr. Sullivan found injury to the liver, two large blood vessels, the inferior vena cava and the aorta, and the bowel and kidney caused by one of the gunshots. These injuries resulted in "massive hemorrhaging to the abdominal cavity." The second gunshot wound caused "injury to the right lung with some hemorrhaging to the cavity surrounding the right lung." Dr. Sullivan testified that in his opinion the victim's cause of death was the gunshot wounds to the chest and abdomen, and the mechanism of death—the process the body goes through that causes the death—was internal hemorrhaging. He estimated that the victim probably died within twenty minutes of the gunshot wounds. Finally, Dr. Sullivan gave a "rough estimate" that it took between three and seven minutes for the victim to lose consciousness due to the hemorrhaging. He did not find any injuries to the brain to suggest that the victim lost consciousness as a result of any blunt trauma before the hemorrhaging.

After defendant withdrew an objection to the admission of Crockett's statement into evidence, the court admitted the statement, which had been given in a plea agreement to testify truthfully against Benson, the shooter in the case. The trial court also admitted into evidence a copy of defendant's statement made to a police investigator as part of a plea agreement in which he agreed to testify truthfully against his co-defendants, if called to do so.

Defendant presented character evidence, including testimony from his mother that he was involved in sports and church, and his own testimony that he had no prior criminal convictions and that he was sorry for what happened to the victim. He also presented exhibits including several letters in support of his character that were introduced at the first sentencing hearing, his GED diploma, a report card, and several schooling certificates he received while in prison awaiting trial on the charges in this case. Defendant testified that he

STATE v. MASON

[125 N.C. App. 216 (1997)]

did not know the victim would be killed, and he claimed that he had no control over what happened to her and did not know what to do when Benson and Crockett began to hit her.

Crockett's statement generally follows the summarized version of his testimony presented by the prosecution at the first sentencing hearing, but it is more detailed. Specifically, Crockett stated that when Benson forced the victim to have sex with Crockett, Benson hit the victim in the face with a gun and yelled, "Bitch you are getting ready to give my nigger some pussy"; Benson made a similar command when he forced the victim to have sex with defendant in the back seat of the car; when the victim failed to make moaning noises, Benson again hit her in the head with the gun and yelled at her to make moaning noises; later, when the car was parked on the deserted roadway, Benson dragged the victim out of the car by her hair and struck her in the head with his hand and the gun; Crockett and defendant also hit the victim with their hands; the victim fell into some mud by the curb, and Benson dragged her through the mud into the middle of the street; both Crockett and defendant told Benson, "come on let's go," but Benson said, "No I going to kill this bitch because of the Rodney King thing," and he shot her twice.

Judge John M. Gardner considered the additional evidence presented at the resentencing hearing and found as the only aggravating factor that the offense was especially heinous, atrocious or cruel. He found as statutory mitigating factors that defendant has no record of criminal convictions; defendant voluntarily acknowledged wrongdoing at an early stage of the criminal process; and defendant has been a person of good character or has had a good reputation in the community. As non-statutory mitigating factors, Judge Gardner found that defendant voluntarily agreed to testify against his co-defendants; defendant was not the person who shot the victim; while incarcerated awaiting sentencing defendant obtained his GED and was employed for a year and a half in the prison laundry, and has a good disciplinary record while in prison; and defendant expressed sympathy for the victim's family. Judge Gardner concluded that the aggravating factor outweighed the mitigating factors and sentenced defendant to life in prison. Defendant now appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Emmett B. Haywood, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Marc D. Towler, for defendant appellant.*

STATE v. MASON

[125 N.C. App. 216 (1997)]

ARNOLD, Chief Judge.

The sole question on appeal is whether the trial judge erred in finding as a statutory aggravating factor that defendant's second degree murder offense was especially heinous, atrocious or cruel. This case falls under the Fair Sentencing Act, which was in effect at the time of the offense. *See* N.C. Gen. Stat. § 15A-1340.4(a)(1)f (1988). Defendant asserts four theories to support his argument.

**[1]** Defendant first argues that reconsideration of the same statutory aggravating factor on resentencing violates the guarantees against double jeopardy established in the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 19 of the North Carolina Constitution. Specifically, he argues that the law applying double jeopardy principles to a resentencing hearing before a jury in a capital case should apply equally to judicial sentencing under the Fair Sentencing Act in this case. We disagree.

In *State v. Silhan*, 302 N.C. 223, 275 S.E.2d 450 (1981), our Supreme Court held that sentencing requirements in a capital case are like elements of a criminal offense, which the jury must find to exist beyond a reasonable doubt. Because the jury has a similar duty to that of deciding the guilt of a defendant, double jeopardy principles apply to determinations of aggravating circumstances in a capital sentencing hearing. *Id.* at 269, 275 S.E.2d at 482. In *State v. Jones*, 314 N.C. 644, 336 S.E.2d 385 (1985), the Supreme Court explicitly declined "to extend the rationale of *Silhan* to Fair Sentencing cases." *Id.* at 648, 336 S.E.2d at 387. The Court distinguished capital sentencing hearings from those under the Fair Sentencing Act, noting that the latter "do not have the hallmarks of a trial on guilt or innocence. The judge hears the evidence without a jury. The formal rules of evidence do not apply." *Id.*, 336 S.E.2d at 387-88. Moreover, in resentencing proceedings under the Fair Sentencing Act, "[e]ach of the sentencing hearings [is] a de novo proceeding brought about by the defendant. At such subsequent hearings, the trial court may find aggravating and mitigating factors without regard to the findings in the prior sentencing hearings." *Id.* at 649, 336 S.E.2d at 388.

Defendant urges us to distinguish *Jones* from the case at hand because in *Jones*, the Court addressed the issue of whether double jeopardy bars the finding of aggravating and mitigating factors *different* from those found at an earlier sentencing hearing. In this case, the same aggravating factor was found at both sentencing hearings. Defendant's attempt to distinguish and limit *Jones* on this basis is

unpersuasive. Clearly, the analysis in *Jones* centers on the constitutional distinction between sentencing by a jury in a capital case and sentencing by a judge under the Fair Sentencing Act. Whether the same or different aggravating or mitigating factors are considered in separate sentencing proceedings is irrelevant to the rationale set forth in *Jones*.

**[2]** Defendant argues next that this Court is bound by "the law of the case" to rule in accordance with our previous ruling that the evidence was insufficient to support a finding that the offense was especially heinous, atrocious or cruel. We disagree.

Defendant contends that this case is governed by *State v. Mitchell*, 67 N.C. App. 549, 313 S.E.2d 201 (1984), in which two aggravating factors were found at an initial sentencing hearing, this Court upheld them on appeal, and the same two factors were found in the resentencing hearing. The *Mitchell* Court found: "In the first appeal these same factors were analyzed and found to be without error. Thus, under the doctrine of the law of the case the earlier ruling of approval is binding upon us." *Id.* at 552, 313 S.E.2d at 203. However, *Mitchell* is distinguishable from the case at hand because the appeal challenged only the *balancing* process of factors found in aggravation and mitigation; the sufficiency of the evidence to support findings of aggravating and mitigating factors was not at issue. *Id.* at 550, 313 S.E.2d at 202.

When, as in *Mitchell*, no new or additional evidence is presented in support of aggravating or mitigating factors in a resentencing hearing this Court may be bound by our ruling on that issue on appeal of the earlier sentencing hearing. Our Supreme Court in *State v. Jackson*, 317 N.C. 1, 6, 343 S.E.2d 814, 817 (1986), *vacated on other grounds*, 479 U.S. 1077, 94 L. Ed. 2d 133 (1987), made an analogous determination in the context of a ruling on the admissibility of evidence:

> Since the evidence relating to the admissibility of the inculpatory statement made by the defendant is virtually identical to the evidence which was previously before us, the doctrine of "the law of the case" applies to make our prior ruling on this issue conclusive. *State v. Wright*, 275 N.C. 242, 166 S.E.2d 681, *cert. denied*, 396 U.S. 934, 24 L.Ed. 2d 232 (1969).

Defendant argues that the evidence presented at the resentencing hearing was "essentially identical" to that presented at the first sen-

tencing hearing. At the resentencing hearing, the prosecutor added to the record written statements by both defendant and Crockett, numerous photographs of the victim and the crime scene, and the testimony of the investigating officers and an expert forensic pathologist. We do not find that this evidence was, as defendant urges, "merely illustration and explanation" of the evidence presented at the first sentencing hearing. Rather, the additional evidence provided the trial court with new and important substantive details relating to the commission of the murder and the victim's suffering. The evidence presented at the resentencing hearing is not identical to that which was previously before this Court, and the doctrine of the law of the case does not bind this Court on the current appeal.

Defendant argues further that the resentencing judge was bound by this Court's ruling that the evidence was insufficient to support as an aggravating factor that the offense was especially heinous, atrocious or cruel. Defendant again bases his argument on the assertion that the evidence at the resentencing hearing was basically identical to that presented in the first sentencing hearing. As we found above, the evidence was not identical, and defendant's premise is flawed.

"[O]n resentencing, the trial court must make a new and fresh determination of the sufficiency of the evidence underlying each factor in aggravation and mitigation, including those factors previously found and affirmed by the appellate court." *State v. Daye*, 78 N.C. App. 753, 755, 338 S.E.2d 557, 559, *aff'd per curiam*, 318 N.C. 502, 349 S.E.2d 576 (1986).

> Of course, if an appellate court has squarely ruled that certain evidence does not support a certain factor, and the *identical* evidence is offered at the resentencing hearing to support the same factor, the trial court is bound by the appellate ruling, not because it is the law of the case, but because it is binding precedent directly on point.

*Id.* at 756, 338 S.E.2d at 560 (emphasis added). The resentencing judge was not bound by this Court's ruling that there was insufficient evidence to support a finding that the crime was especially heinous, atrocious or cruel, when new evidence was presented to support the same aggravating factor.

[3] Finally, defendant argues that even if the new evidence presented at the resentencing hearing is sufficient "to free the resentencing

judge from this Court's earlier ruling," the evidence is still insufficient to support the aggravating factor that the offense was especially heinous, atrocious or cruel. Such a finding must be supported by a preponderance of the evidence. *State v. Medlin*, 62 N.C. App. 251, 252, 302 S.E.2d 483, 485 (1983) (citing G.S. § 15A-1340.4(a)).

The standard for determining whether an offense is especially heinous, atrocious or cruel is "whether the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense.*" *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E.2d 783, 786 (1983). "Whether death resulted from multiple acts of violence and was immediate are factors properly considered under that standard." *State v. Hines*, 314 N.C. 522, 524, 335 S.E.2d 6, 7 (1985).

In the cases in which our appellate courts have found insufficient evidence to support a finding that the second degree murder was especially heinous, atrocious or cruel, the facts showed that the murder was carried out swiftly, or death or unconsciousness was immediate. *See, e.g., State v. Torres*, 322 N.C. 440, 446, 368 S.E.2d 609, 612 (1988) (shots fired at close range in rapid succession into victim's head and chest, killing him instantly); *State v. Higson*, 310 N.C. 418, 423, 312 S.E.2d 437, 440 (1984) (victim stabbed in the heart after a brief struggle and died that day); *State v. Stanley*, 110 N.C. App. 87, 90, 429 S.E.2d 349, 351 (1993) (victim hit one or two times in the head with a stick, rendered unconscious immediately, and either of the blows could have been fatal); *State v. Nelson*, 76 N.C. App. 371, 375, 333 S.E.2d 499, 502 (1985) (unsuspecting victim shot once in the back), *modified on other grounds and aff'd*, 316 N.C. 350, 341 S.E.2d 561 (1986).

In contrast, the murder in this case occurred after escalating violence, and the victim did not lose consciousness or die immediately. After she was kidnapped, driven around for several hours, taunted, hit in the face and head with a gun, and raped twice, the victim was dragged out of her car by her hair; she suffered severe beatings by all three co-defendants, as evidenced by the multiple scrapes and bruises on her body; she was knocked down, kicked in the face, and dragged through the mud; and she was told just before she was shot twice that she was being killed "because of the Rodney King thing." Expert testimony established that she was conscious for at least three to seven minutes after she was shot, as she was left lying alone in the street to contemplate her impending death.

The evidence fully supports a finding that the victim suffered more physical pain and psychological suffering than normally present in a second degree murder. There was no error in finding as an aggravating factor that the murder was especially heinous, atrocious or cruel.

Affirmed.

Judges EAGLES and MARTIN, Mark D., concur.