STATE OF NORTH CAROLINA v. EUGENE TATE HILL

No. COA10-399

(Filed 1 March 2011)

**1. Robbery— with a dangerous weapon—sufficient evidence— motion to dismiss properly denied**

The trial court did not err by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon where there was sufficient evidence of each element of the offense, including that defendant acted in concert with another individual to rob the victim.

**2. Evidence— prior offense committed by witness—chain of events—no unfair prejudice**

The trial court did not err in allowing a witness to testify about a prior robbery he had committed as the testimony was evidence pertaining to the chain of events in defendant's robbery and the probative value of the evidence was not outweighed by unfair prejudice.


Appeal by Defendant from judgment entered 29 September 2009 by Judge James U. Downs in Superior Court, Buncombe County. Heard in the Court of Appeals 28 September 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Amanda P. Little, for the State.*

*Charlotte Gail Blake for Defendant-Appellant.*


McGEE, Judge.

Eugene Tate Hill (Defendant) was indicted 6 July 2009 for one count of robbery with a dangerous weapon and was found guilty on 29 September 2009. The trial court classified Defendant's prior record level as "IV." Defendant was sentenced to 117 months to 150 months in prison. Defendant appeals.

I. Factual Background

Kevin Cole (Mr. Cole) and his cousin drove up to an automated teller machine (the ATM) in Asheville, North Carolina, on 13 May 2000, around 10:40 p.m. As Mr. Cole was withdrawing money from the

ATM, a man approached his vehicle, grabbed Mr. Cole's arm, and told Mr. Cole to hand over the money. Mr. Cole did not recognize the man. As the money came out of the ATM, the man grabbed the money and ran. Mr. Cole put his vehicle in "drive" and attempted to follow the man. While looking for the man, Mr. Cole saw a pickup truck (the truck) in a nearby parking lot. Mr. Cole asked the driver of the truck if he had seen anyone, and the driver said he had not. Mr. Cole and his cousin continued to search for the man, and they again saw the truck. Mr. Cole's cousin noted the license plate number on the truck and Mr. Cole called the police. Detective Kevin Taylor (Detective Taylor) of the Asheville Police Department responded.

Mr. Cole testified that he sustained a "bleeding laceration on [his] left wrist" as a result of the robbery, and the State entered into evidence a photograph of Mr. Cole's arm that depicted his injury. The State also offered into evidence a statement that Mr. Cole wrote and gave to police after the robbery. The trial court admitted Mr. Cole's statement to both corroborate Mr. Cole's testimony and to refresh Mr. Cole's recollection. Mr. Cole read his statement into evidence. In his statement, Mr. Cole said that a "man came beside the driver's side window [of his car] and pointed his hand with an object in it and told me to drive off. I grabbed his hand and looked at his face. . . . [T]he [man] grab[bed] [the money] and . . . ran away[.]" Mr. Cole further wrote that he "left the parking lot to pursue [the man] and . . . saw a . . . truck sitting in the parking lot across the street[.]" Mr. Cole "drove up to the side of the [truck] and asked the driver if he saw the [man], . . .—and I asked [the driver] to stay until APD arrived. [The driver] said 'I have an appointment.' I got [the truck's] license plate number[.]" Mr. Cole also said that "[t]he man in the [truck] returned and said he didn't see the guy, and I once again told him to stay until APD arrived. . . . He left."

Robert Jones (Mr. Jones) testified concerning a robbery that occurred earlier in the evening of 13 May 2000. Defendant objected to Mr. Jones' testimony, arguing that it was prejudicial because the charges regarding that robbery were dismissed, and that it was Rule "403(b)" evidence and Defendant had not been given proper notice of the State's intention to present the testimony. The trial court overruled Defendant's objection.

Mr. Jones testified that he drove up to an ATM in Asheville on 13 May 2000, around 6:00 p.m. As Mr. Jones waited for the ATM to emit his money, a man approached, held a knife to Mr. Jones' neck and

demanded his wallet. Mr. Jones was "able to push [the man's] arm up and let [his] car roll forward fifteen or twenty feet." Mr. Jones saw the unidentified man take the money from the ATM and enter the passenger side of "an '80's model GMC" two-tone pickup truck. Mr. Jones gave chase but eventually lost sight of the pickup truck.

Detective Taylor testified that he had investigated the robbery reported by Mr. Jones. Detective Taylor testified that Mr. Jones told him that the suspect "jumped in the passenger's side of a two-toned, white-and-purple GMC pick-up[,]" which was driven by a white male. Detective Taylor also testified regarding a statement that Mr. Cole made on the night of 13 May 2000, after reporting his robbery to police. Detective Taylor testified that Mr. Cole stated that the driver of the truck had initially responded "yes" when asked if he had seen "anybody fleeing." The truck later returned to the area, and the driver told Mr. Cole that he had not, in fact, seen anyone. Mr. Cole asked the driver to wait for police to arrive, but the driver left, saying that he had "an appointment."

Detective Taylor took a description of the truck and relayed the description and license plate number to other officers. Asheville Police Officer Darryl McCurry (Officer McCurry) saw a pickup truck matching the description and stopped the truck to speak with the driver. When Officer McCurry stopped the truck, it was being driven by Defendant. The license plate on the truck was not assigned to that vehicle, but belonged to a van owned by David and Nancy Webb. Further investigation showed that the truck was also owned by the Webbs, but the license plate was affixed to the wrong vehicle. Detective Taylor suspected David Webb as being the man who had committed both robberies, while Defendant participated as the driver of the truck. Defendant was arrested by Officer McCurry for outstanding arrest warrants from Charlotte.

## II. Motion to Dismiss

[1] Defendant first argues that the trial court erred by denying his motion to dismiss the charge of robbery with a dangerous weapon based on insufficiency of the evidence. " 'In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom.' " *State v. Golphin,* 352 N.C. 364, 458, 533 S.E.2d 168, 229 (2000) (citations omitted). "To withstand a defendant's motion to dismiss, 'the trial court need determine only whether

**STATE v. HILL**

[210 N.C. App. 170 (2011)]

there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator.' " *Id.* (citation omitted).

> Circumstantial evidence may be utilized to overcome a motion to dismiss " 'even when the evidence does not rule out every hypothesis of innocence.' " . . . If the trial court finds substantial evidence, whether direct or circumstantial, or a combination, "to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." . . . If, however, the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed."

*Id.*, 533 S.E.2d at 229-30 (citations omitted). " 'Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then " 'it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.' " ' " *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (2000) (citation and emphasis omitted).

The essential elements of robbery with a dangerous weapon are: "(1) the unlawful taking or attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." *State v. Small*, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991) (citation omitted). "A person is constructively present during the commission of a crime if he is close enough to provide assistance if needed and to encourage the actual execution of the crime." *State v. Gaines*, 345 N.C. 647, 675-76, 483 S.E.2d 396, 413 (1997).

> It is not . . . necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.

*State v. Joyner*, 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979).

Defendant argues that the "State's evidence against [Defendant] at best raises only a suspicion that he joined with anyone to rob [Mr.] Cole." Defendant also argues that the State presented "insufficient

evidence that whoever actually robbed [Mr.] Cole possessed a dangerous weapon or that the robber obtained the property from [Mr.] Cole by endangering or threatening to endanger his life with a dangerous weapon." Further, Defendant contends that "the trial court should have dismissed the lesser included offense of common law robbery because there was no evidence the money was taken from . . . [Mr.] Cole by violence or by putting [Mr.] Cole in fear." Finally, Defendant argues that the State failed to "show that [Defendant] was present or constructively present during the . . . [r]obbery." We disagree with Defendant's arguments.

Defendant asserts that the State's evidence simply showed that he was in a two-toned pickup truck near the vicinity of the robbery shortly after the robbery occurred. Defendant argues that the "mere fact that [Defendant] was present somewhere in the area soon after [Mr.] Cole was robbed is not sufficient to show that [Defendant] acted in concert with anyone to rob [Mr.] Cole." However, viewing the evidence in the light most favorable to the State, we find that the State presented much more substantial evidence than "the mere fact" that Defendant was near the scene of the crime.

We note the State presented the following evidence at trial. Mr. Cole saw an unidentified man run away from the ATM after taking his money. The State presented a photograph depicting a "bleeding laceration" that Mr. Cole sustained during the robbery. The assailant ran in the direction of a parking lot where Mr. Cole found a maroon and silver two-tone GMC pickup truck parked. Mr. Cole asked the driver of the truck if he had seen a man running from the ATM. The driver replied "yes," but when asked again later, replied "no" and immediately left for an "appointment" at 10:40 p.m., despite Mr. Cole asking him to wait for the police. Mr. Cole gave the license plate number of the truck to police, who found Defendant driving the truck. The truck was owned by Mr. Webb, a suspect in the earlier robbery of Mr. Jones, who was robbed four hours earlier at an ATM. Mr. Jones' robber demanded money, brandished a knife, then took Mr. Jones' money out of the ATM and ran to a white and purple two-tone GMC pickup truck parked in a nearby parking lot.

Thus, in the light most favorable to the State, there was substantial evidence that a man had robbed Mr. Jones while Mr. Jones was using an ATM; the robber ran to a two-toned maroon and silver or purple and white GMC pickup truck; the robber got in the passenger side of the vehicle, which was driven by another person. Later, Defendant

was found driving near the ATM where Mr. Cole had been robbed, in a two-tone GMC pickup truck, similar to the truck described by Mr. Jones that was used in his robbery. Defendant gave inconsistent stories to Mr. Cole and also told Mr. Cole that he had an appointment at 10:40 p.m. In the light most favorable to the State, this is substantial evidence that Defendant was waiting for Mr. Webb and that the two acted in concert to commit the two robberies at the ATMs using a knife. Though Defendant asserts there was no evidence that he was present during the robbery, his involvement as driver resulted in his constructive presence at the scene of the crime despite his not being at the ATM, but rather in a truck parked nearby. *See State v. Lyles*, 19 N.C. App. 632, 636, 199 S.E.2d 699, 702 (1973) ("The driver of a get-away car is present at the scene of the crime, and he is a principal rather than an accessory before the fact."). The trial court did not err in denying Defendant's motion to dismiss.

### III. Mr. Jones' Testimony

**[2]** Defendant next argues Mr. Jones' testimony concerning his robbery was not relevant and that "any probative value was outweighed by unfair prejudice[.]"

Evidence that is

"not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."

*State v. Agee*, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990) (citation omitted).

Defendant first argues that Mr. Jones' testimony was irrelevant because the robberies were committed "several hours apart and in different parts of town." N.C. Gen. Stat. § 8C-1, Rule 401 (2009) defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Defendant cites to *Agee*, distinguishing it from the present case. In *Agee*, our Supreme Court addressed the admissibility of evidence that a police officer found marijuana on the person of the defendant in the process of searching him. The defendant was being tried for possession of other drugs, found after the officer arrested

the defendant for possession of the marijuana. *Agee*, 326 N.C. at 548, 391 S.E.2d at 174. The Supreme Court noted:

> "[A]ll facts, relevant to the proof of the defendant's having committed the offense with which he is charged, may be shown by evidence, otherwise competent, even though that evidence necessarily indicates the commission by him of another criminal offense. Thus, such evidence of other offenses is competent to show. . . the *quo animo*, intent, design, guilty knowledge, or scienter, or to make out the *res gestae*, or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions."

*Id.* at 547, 391 S.E.2d at 174 (citation omitted). The Court held that "discovery of the marijuana on defendant's person constituted an event in the officer's narrative which led naturally to the search of defendant's vehicle and the subsequent detection of the LSD." *Id.* at 548, 391 S.E.2d at 174. Defendant contends that, unlike the marijuana found in *Agee*, Mr. Jones' testimony was not evidence pertaining to the chain of events in Mr. Cole's robbery. We disagree.

Mr. Jones' testimony makes the existence of several material facts "more probable or less probable than [they] would be without the evidence." N.C.G.S. § 8C-1, Rule 401. For example, the facts that (1) Mr. Webb's truck had (2) been used by two people in the commission of a robbery (3) with a deadly weapon (4) at an ATM earlier that evening. This testimony is certainly relevant to the jury's determination of whether Defendant, found driving Mr. Webb's truck, was involved in an ATM robbery scheme. We therefore hold that Mr. Jones' testimony was relevant.

Defendant next argues that, even if Mr. Jones' testimony was relevant, its probative value was outweighed by the danger of unfair prejudice to Defendant. A determination of admissibility pursuant to Rule 403 requires the trial court to balance the probative value of proffered evidence against "the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2009). This balance is left to "the sound discretion of the trial court, and the trial court's ruling should not be overturned on appeal unless the ruling was 'manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Hyde*, 352 N.C. 37, 55, 530 S.E.2d 281, 293 (2000) (citation omitted). However, "[e]vidence which is probative of the

State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *State v. Coffey,* 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990). Defendant cites no authority that the degree to which Mr. Jones' testimony was prejudicial to him was unfair. The trial court's admission of Mr. Jones' testimony was therefore not error.

No Error.

Judge BEASLEY concurs.

Judge HUNTER, JR. dissents with a separate opinion.

HUNTER, JR., Robert N., Judge dissenting.

The trial for the incident occurring on 13 May 2000 took place on 28 September 2009, over nine years after the event. The only eyewitness, Mr. Cole, when asked "Do you recall [the] incident?", answered "Parts of it; the majority of it." The bulk of his testimony was based on a written statement to the police, introduced only to refresh the recollection of the witness and to corroborate his testimony.

On 13 May 2000, Kevin Ray Cole and his cousin drove up to an automated teller machine (ATM) at a Wachovia in Asheville, North Carolina, sometime around 10:30pm. Mr. Cole put his ATM card into the machine and entered an amount of money (approximately one hundred dollars) to withdraw. Before Mr. Cole could remove the money from the ATM, an unidentified person approached his vehicle on the driver's side. At trial, Mr. Cole testified that this person "grabbed my arm and told me to give [the person] the cash or to leave it or something like that." In a previous statement to police, Mr. Cole said that the man "pointed his hand with an object in it and told me to drive off." Mr. Cole testified that at first, he thought "it was like a joke, so [he] turned around and looked and [he] saw a person [he] didn't know and realized they weren't kidding." The person then grabbed the money and ran away. At trial, a photograph was introduced into evidence showing a "bleeding laceration" received by Mr. Cole "[f]rom the robbery."

Mr. Cole then put his car in drive and drove in the direction the perpetrator was going, but he could not see the perpetrator. He saw a vehicle in a parking lot and stopped to ask the driver if he had seen anyone. Mr. Cole testified at trial that the driver of the vehicle said "No." In his previous statement, Mr. Cole stated the man in the truck told him " 'I have an appointment.' " He did not recall at trial how far

away the vehicle was from the bank. After driving around, Mr. Cole believed he saw the same vehicle again and told the driver to stay where he was until the police could arrive. Mr. Cole's cousin took down the license plate of the vehicle.

Evidence was also presented at trial of a previous incident also occurring on 13 May 2000. Earlier that day, Robert Jones drove up to an ATM at First Citizens Bank, inserted his card, and pressed a transaction. At that time, a man leaned into his open window, held a knife to Mr. Jones' neck, and said "Give it up." Mr. Jones was able to "push his arm up and let the car roll forward fifteen or twenty feet." The perpetrator grabbed the money from the ATM, and Mr. Jones pursued him. The perpetrator then jumped into a two-tone truck, an 80's model GMC or Chevrolet. Charges against Defendant for this incident were dismissed.

The night of 13 May 2000, Officer Darryl McCurry of the Asheville Police Department located a vehicle matching the description and license plate number provided by Mr. Cole and his cousin. Defendant was driving that vehicle at the time. Detective Kevin Taylor of the Asheville Police Department testified that the tag on the vehicle was not for that vehicle, but instead for a van registered to David and Nancy Webb. By using the bill of sale, Detective Taylor was later able to determine that the vehicle driven by Defendant belonged to David and Nancy Webb. The theory of the State at trial was that Defendant was acting in concert with David Webb, the eventual suspect in both incidents. There was no further evidence provided at trial of Mr. Webb's involvement.

Detective Taylor testified regarding both incidents, but his testimony was presented only for corroboration of the testimony of Mr. Cole and Mr. Jones. The jury was told that his testimony was limited to corroboration at the time of his testimony, and the trial court gave an instruction on statements not made under oath. Detective Taylor first testified about the incident with Mr. Jones, stating "[h]e informed me that he was trying to get money from the ATM when the suspect approached him, held a knife to him and ended up taking the money and fled." He then testified to the incident with Mr. Cole, stating "[a]gain, he tried to withdraw money from the ATM and was approached by an individual with a knife who robbed him of his money." Mr. Cole never testified that there was a knife involved and did not describe the shape or nature of any object involved in the incident.

Charges of robbery with a dangerous weapon and common law robbery were submitted to the jury. Defendant was found guilty of robbery with a dangerous weapon and sentenced to 117 to 150 months' imprisonment.

Defendant argues the trial court erred by denying his motion to dismiss the charge of robbery with a dangerous weapon based on insufficiency of the evidence.

On a motion to dismiss, the trial court must determine "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.*

In determining whether there is substantial evidence, the trial court must look at the evidence in "the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom." *Id.* However, if the evidence is "sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed." *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983). This is the case even if "the suspicion aroused by the evidence is strong." *Id.*

Armed robbery consists of "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." *State v. Small*, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991); N.C. Gen. Stat. § 14-87 (2009). "Force or intimidation occasioned by the use or threatened use of firearms, is the main element of the offense." *Id.*

The "gravamen of the offense is the endangering or threatening of human life by the use or threatened use of firearms or other dangerous weapons in the perpetration of or even in the attempt to perpetrate the crime of robbery." *State v. Marshall*, 188 N.C. App. 744, 750, 656 S.E.2d 709, 714 (2008).

The difference between armed robbery and common law robbery is that armed robbery requires the State to produce sufficient evidence "to show that the victim was endangered or threatened by the use or threatened use of a 'firearm or other dangerous weapon,

implement or means.' " *State v. Joyner*, 295 N.C. 55, 63, 243 S.E.2d 367, 373 (1978). "The question in an armed robbery case is whether a person's life was in fact endangered or threatened by defendant's possession, use or threatened use of a dangerous weapon." *Id.*

Mr. Cole did not testify that there was a knife or any weapon or sharp object used or present during the incident. The written statement stated only that there was an "object" and did not describe that object or mention its shape. Detective Taylor did mention a knife in his testimony. However, his testimony was offered only to corroborate prior eyewitness testimony. "[A] prior statement is admitted only as corroboration of the substantive witness and is not itself to be received as substantive evidence." *State v. Stills*, 310 N.C. 410, 415, 312 S.E.2d 443, 447 (1984). As Mr. Cole did not testify to the nature of the object, Detective Taylor's mention of the knife did not corroborate Mr. Cole's testimony, and there is therefore no eyewitness evidence that a sharp object or knife was used or present.

The only other evidence of a "sharp object" being present is a photograph introduced at trial that shows a laceration on Mr. Cole's wrist. The photograph was introduced for illustrative purposes only. Mr. Cole testified that he received the laceration "[f]rom the robbery." There was no other testimony given regarding the source of the laceration, and there is no evidence that it came from a dangerous weapon of any kind. There was not substantial evidence that a firearm or other dangerous weapon was used or that the perpetrator threatened to use a firearm or dangerous weapon.

There is also no testimony that Mr. Cole's life was threatened or endangered. The facts showed that either the perpetrator grabbed Mr. Cole's arm and said to give him the cash, or the perpetrator "pointed his hand with an object in it" and told Mr. Cole to drive off. Mr. Cole first believed it was a joke. There was no testimony that Mr. Cole's life was in any danger or that his life was threatened in any way. Thus, there was not substantial evidence that a person's life was threatened or endangered.

Absent substantial evidence that a firearm or other dangerous weapon was used, and absent substantial evidence that a person's life was endangered or threatened, two of the three elements required for robbery with a dangerous weapon are not present. The motion to dismiss the charge of robbery with a dangerous weapon should have been granted.

I would reverse and remand for a new trial on common law robbery.